Hillsborough, }
Nov. 1, 1910. }

### ATTORNEY-GENERAL (*ex rel.* MOUSSETTE) v. CROSS.

### SAME v. SAME.

Where the mayor of a city has a negative upon the action of the board of aldermen in the matter of appointments, the express or implied assent of the mayor is essential to the election of a candidate who receives a majority of the aldermanic vote.

INFORMATIONS, in the nature of *quo warranto*, to determine the title of the defendant to the office of overseer of the poor of Nashua. Transferred without ruling from the May term, 1910, of the superior court by *Plummer*, J., on an agreed statement of facts.

In January, 1909, the board of mayor and aldermen proceeded to the election of an overseer of the poor for the ensuing year. Five aldermen voted for the relator, and four aldermen and the mayor voted for the defendant.  The mayor thereupon declared

the vote a tie, and the defendant, who had been chosen to the office for the year 1908, continued to perform its duties in 1909, during which term the first information was filed. In January, 1910, a like meeting was held and a like vote cast for the same persons for the same office. The mayor again declared a tie vote, and the defendant continued to perform the duties of the office.

It is contended for the relator that, under the general statutes and the charter of Nashua, the mayor has no right to vote except in case of a tie in the aldermanic vote, and that the relator was duly elected overseer of the poor for 1909 and 1910. It is claimed for the defendant that the mayor had a legal right to vote for overseer of the poor, that in 1909 and 1910 there was no election to that office by reason of tie votes, and that the defendant rightfully continues to hold the office until the election and qualification of his successor.

*Henry A. Burque* and *Thomas F. Moran* (*Mr. Burque* orally), for the relator.

*George B. French* (by brief and orally), for the defendant.

YOUNG, J. Prior to 1893 the overseers of the poor of Nashua were elected by the people (Laws 1878, *c.* 165, *s.* 2) ; but in that year it was enacted that " the board of mayor and aldermen of said city, on the first day of January, 1894, and annually thereafter, shall elect by ballot and by major vote one person to be overseer of the poor." Laws 1893, *c.* 285, *s.* 5. The Public Statutes (*c.* 47, *s.* 7) provide that the mayor " shall have a negative upon the action of the aldermen in laying out highways and in all other matters ; and no vote can be passed or appointment made by the board of aldermen over his veto unless by a vote of two thirds at least of all the aldermen elected." If this language is given its ordinary meaning, the mayor cannot vote for an overseer of the poor, but can veto an election to that office by the aldermen ; for ordinarily when " the board of mayor and aldermen " is spoken of, two independent bodies are intended, each having a negative on the action of the other, and there is nothing in this case, as there was in *Cate* v. *Martin*, 70 N. H. 135, to show that the legislature intended this section should not apply.

Since the mayor could not legally vote for the defendant, the vote taken shows that the relator was the choice of the aldermen. He, however, was not elected when this proceeding was brought, because to an election the express, or at least the implied, assent of the mayor is essential.

*Petition dismissed.*

All concurred.