Hillsborough } No. 3346.
Oct. 6, 1942. }

ATTORNEY-GENERAL (*ex rel. Michael J. Quinn*)

*v.*

CLARENCE J. R. HUNTER & a.

*Chretien & Craig,* by brief, for the relator.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the defendants.

BURQUE, J. The only question before us is whether the mayor, improperly made a party, had the right to vote to break the tie.

Originally the city clerk was elected by the city council, composed of the mayor and aldermen and common council. Section 22, chapter 384, Laws 1846. The mayor presided in the board of aldermen, and in joint meetings of the two boards, and had a casting vote only. *Ib., s.* 9. Subsequent legislation abolished the common council and vested all powers in the Board of Mayor and Aldermen. (Laws 1915, *c.* 249, *s.* 1.)

In 1871 (*c.* 24, *s.* 1), the following legislation, entitled "An act in relation to the powers of mayors of cities" was enacted, which provides as follows: "The mayor shall preside in the board of aldermen and in convention of the city councils, . . . He shall have a negative upon the action of the aldermen in laying out highways, and in all other matters." Section 2 of the same chapter repeals "all acts and parts of act[s] inconsistent with this act."

This statute was reënacted *verbatim* in 1878, G. L., *c.* 45, *s.* 7, and in 1891, P. S., *c.* 47, *s.* 7. It received interpretation by this court in 1910, *Attorney-General* v. *Cross,* 75 N. H. 541, a case involving the election of an overseer of the poor by the Board of Mayor and Alder-

men in Nashua. The Nashua charter, adopted in 1853, had the same provision found in the charter of Manchester, to wit: that "He [the mayor] shall preside in the board of aldermen and in joint-meeting of the two boards, but shall have a casting vote only." Laws 1853, *c.* 1404, *s.* 11. The court in this *Cross* case, after quoting P. S., *c.* 47, *s.* 7, says: (*p.* 542) "If this language is given its ordinary meaning, the mayor cannot vote for an overseer of the poor, but can veto an election to that office by the aldermen; for ordinarily when 'the board of mayor and aldermen' is spoken of, two independent bodies are intended, each having a negative on the action of the other, and there is nothing in this case, as there was in *Cate* v. *Martin*, 70 N. H. 135, to show that the legislature intended this section should not apply." The decision was necessarily based on the premise that the provision of the charter giving the mayor a casting vote was repealed by the 1871 act, thus holding that the repeal applied to city charters theretofore granted.

The above interpretation was approved in *Attorney-General* v. *Hayes*, 77 N. H. 358, 359 (1914). After the above decisions, the statute was again reënacted *verbatim* in 1925, P. L., *c.* 51, *s.* 9; and in 1941, R. L., *c.* 63, *s.* 9, which took effect January 1, 1942. Reenactment of a statute without change after its judicial interpretation constitutes a legislative adoption of such interpretation. *Dubuc* v. *Company*, 91 N. H. 173, 175 and cases cited.

It follows that the mayor in the instant case had no right to vote in the election of the City Clerk of Manchester, and that the relator, being the legally qualified incumbent at the time, and there being no valid election of a successor to him, continued in office as a holdover and is now and has been throughout entitled to hold the office.

*Information granted.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the defendant moved for a rehearing.

*McLane, Davis & Carleton, (Mr. Kenneth F. Graf)*, for the motion.

ALLEN, C. J. The contention that the general law for cities enacted in 1867 (Gen. St., *cc.* 40–44) did not repeal or supersede provisions of city charters theretofore granted in respect to the voting powers of mayors, cannot be sustained. At that time six

city charters had been granted, not including that of Keene which the voters of the town did not accept. The general law was designed to establish uniformity in city government, and provided a comprehensive scheme for the government of all cities of the state. There was no prior general legislation on the subject, and obviously the 1867 enactment could apply to existing cities only by giving it a superseding effect on the charters in respect to their provisions which were not in accord with the enactment. While each city could, and now can, be established only by special charter, the general legislation established uniform provisions and regulations for them, the same as had been done for towns, to be in force for all existing cities, as well as for future ones except in respect to special and exceptional provisions which their charters might contain. The clear purpose of the general legislation would be in great measure defeated if it were held inapplicable to charters then existing, and inoperative to substitute for provisions of the charters conflicting with it.

Whatever the usual rule of construction may be as to the effect of general legislation upon special laws previously enacted, the situation here is one of general legislation necessarily applying to special laws if it is to have any revisory force. The well established rule that "When the legislature makes a revision of the subject matter of a statute and by the new statute designs a complete scheme, so much of the former statute as is excluded, though not expressly repealed, is to be deemed as superseded" (Hening's Dig., 1468, and cases cited) is pertinently controlling. The case of *Hillsborough County* v. *Manchester*, 49 N. H. 57, definitely holds the charter of Manchester subject to the general legislation of 1867 in this language (61): "In fact, those provisions [of the charter] must have been regarded as repealed [by the general legislation], as upon general principles they were."

The case of *Attorney-General* v. *Cross*, 75 N. H. 541, supports this construction of the legislation. While the opinion does not give extended discussion, assumably because argument in respect to it was not stressed, the court evidently had it under consideration. The brief for the defendant shows this. 275 Briefs & Cases 419.

The charters of the six cities granted prior to 1867 and then in force each gave the mayor a casting vote, and this provision was contained in the general legislation of that year (Gen. St., *c*. 41, *s*. 8). The 1871 act (Laws 1871, *c*. 24) changed his voting power to a veto power, and expressly repealed all inconsistent legislation. Thus

210

there was more than a superseding effect. Not only necessarily implied but by the express provision of repeal, both the 1867 act and the charter provisions which that act superseded were repealed in this respect.

*Motion denied.*

All concurred.