Original
No. 6912

RICHARD P. BROUILLARD & *a.*

v.

THE GOVERNOR AND COUNCIL & a.

July 31, 1974

*McLane, Graf, Greene & Brown* and *Charles A. DeGrandpre* and *Richard S. Snierson* (*Mr. DeGrandpre* orally) for the plaintiffs.

*Warren B. Rudman,* attorney general, and *David H. Souter,* deputy attorney general, and *Richard V. Weibusch and Michael P. Bentley,* attorneys(*Mr. Souter* orally), for the defendants.

*Charles G. Douglas III,* special counsel, by brief and orally, for the Governor.

*Richard F. Upton,* special counsel, by brief and orally, for James H. Hayes, Robert E. Whalen, Bernard A. Streeter, Jr., Lyle E. Hersom and John F. Bridges, Executive Councilors.

GRIFFITH, J. This is a petition for a writ of mandamus arising from the continuing conflict between the Advisory Commission of the Department of Health and Welfare and the Governor and Council concerning the appointment of a commissioner of health and welfare. RSA 126-A:4 (Supp. 1973) provides that the commissioner of health and welfare "shall be appointed by the governor and council from two or more nominees or, if agreeable to the governor, a lesser number of candidates nominated by the advisory commission . . . ." The office of commissioner of health and welfare became vacant December 1, 1973. On December 5, 1973, the advisory commission submitted to the Governor the names of two candidates for the office. Both candidates were unsatisfactory to the Governor and he refused to appoint either of them.

On December 7, 1973, in *Opinion of the Justices,* 113 N.H. 675, 312 A.2d 702 (1973), in response to questions submitted by the Governor and Council, we expressed the opinion that a member of the department could be designated by the Governor and Council to administer the financial affairs of

the department on an emergency basis. However, we also were of the opinion that the mandatory language of RSA 126-A:4 (Supp. 1973) did not permit the Governor and Council to "designate an individual to serve in the capacity of Commissioner of Health and Welfare with full power and authority to administer the affairs of said department." *Id.* at 677, 312 A.2d at 703.

On March 6, 1974, in *Opinion of the Justices*, 114 N.H. 165, 316 A.2d 174 (1974), we replied to questions submitted by the Senate concerning S.B. 25, an act providing for the nomination and appointment of the commissioner of health and welfare by the Governor and Council. In response to those questions, we again noted that the language of RSA 126-A:4 (Supp. 1973) required the Governor and Council to appoint from the nominees submitted by the advisory commission. In answer to a question as to the time limit within which an appointment must be made, we indicated that that determination rested in the discretion of the Governor and Council. S.B. 25 was not enacted into law.

In a letter dated April 25, 1974, the advisory commission resubmitted in nomination the two original candidates along with two additional candidates. At the May 1, 1974 meeting of the Governor and Council, the Governor submitted the names of each of the four candidates for the Council's consideration. The first two candidates received an adverse vote from the Council. William Bronstein, one of the two new nominees, received a favorable vote of two to one with two councilors abstaining, but the Governor negated the confirmation. The last nominee, Stephen W. Smith, received a favorable vote of four to one from the Council, and the Governor then negated that confirmation. No further nominations have been submitted by the advisory commission and no further action has been taken by the Governor and Council.

The present action is an original petition to this court for a writ of mandamus ordering the Governor and Council to immediately appoint one of the four nominees chosen by the advisory commission. The plaintiffs are ten of the fourteen members of the advisory commission and three former members. While the question whether a writ of man-

damus can issue against a Governor has never been dealt with in New Hampshire, the issue has been raised in a number of other jurisdictions with mixed results. Annot., 105 A.L.R. 1124 (1936). It is clear that mandamus will not lie against an Executive where he has discretion to act. But there is disagreement among States as to whether a court may issue a writ of mandamus against a Governor when he acts in a ministerial capacity without discretion. Some of those courts which have refused to issue the writ under any circumstances have taken the view that a court's very attempt to determine whether the nature of the act in question is discretionary or ministerial infringes on the separation of powers and that issuance of the writ could not be enforced in any event. *Kelly v. Curtis,* 287 A.2d 426 (Me. 1972); *Rice v. Draper,* 207 Mass. 577, 93 N.E. 821 (1911); *People v. Morton,* 156 N.Y. 36, 50 N.E. 791 (1898); *Sutherland v. Governor,* 29 Mich. 320 (1874). Courts which have held that mandamus will lie against a Governor as to ministerial acts have generally taken the view that all persons are subject to a determination of the law by the courts and that they should not concern themselves with enforcement of the decree. *Hollman v. Warren,* 32 Cal. 2d 351, 196 P.2d 562 (1948); *Blalock v. Johnston,* 180 S.C. 40, 185 S.E. 51 (1936); *State v. Dickerson,* 33 Nev. 540, 113 P. 105 (1910); *Martin v. Ingham,* 38 Kan. 641, 17 P. 162 (1888). While we are not prepared to assert that mandamus will not lie against a Governor (*see National Treasury Employees Union v. Nixon,* 492 F.2d 587 (D.C. Cir. 1974); *Marbury v. Madison,* 5 U.S. (Cranch) 137 (1803)), it is unlikely that the necessity of the writ should ever arise in this State. "When the law is settled it will be obeyed." *Tirrell v. Johnston,* 86 N.H. 530, 532, 171 A. 641, 642 (1934); *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974). It should not be necessary to order a Governor of this State to obey the law he has taken an oath to execute. N.H. CONST. pt. II, art. 41; *Poe v. Gerstein,* 94 S. Ct. 2247 (1974).

*Attorney General v. Taggart,* 66 N.H. 362, 29 A. 1027 (1890), relied upon as authority for mandamus against the Governor, was in effect a declaratory judgment before adoption of the Declaratory Judgment Act (RSA 491:22), as the final sentence in that decision indicates. "A decision of this question might

be as important as an adjudicated reformation of a deed, or as any other establishment of a private right by a *declaratory judgment.*" *Attorney General v. Taggart,* 66 N.H. 362, 373, 29 A. 1027, 1033 (1890) (emphasis added). "It is therefore immaterial whether the proper proceeding is an application for [mandamus] or a petition for a declaratory judgement." *Tirrell v. Johnston,* 86 N.H. 530, 532, 171 A. 641, 642 (1934). In accordance with accepted practice in this State we therefore treat this action as a petition for a declaratory judgment and proceed to decide the case. *Dinsmore v. Mayor and Aldermen,* 76 N.H. 187, 190, 81 A. 533, 535 (1911); *see State v. Harkaway,* 105 N.H. 42, 46, 192 A.2d 619, 622 (1963); *Boody v. Watson,* 64 N.H. 162, 9 A. 794 (1886).

Whatever the merits of defendant's contention that plaintiffs lack standing to maintain a petition for a writ of mandamus, it is clear that they are entitled to have the law determined by declaratory judgment. *O'Neil v. Thomson,* 114 N.H. 155, 158-59, 316 A.2d 168, 170 (1974); *N.H. &c. Beverage Ass'n v. Commissioner,* 100 N.H. 5, 6, 116 A.2d 885, 886 (1955).

Subsequent to the argument of this case, the defendant Governor moved to dismiss the case based upon the request of Stephen W. Smith and William Bronstein that their names be withdrawn from consideration as candidates. However there remain two candidates which are all the advisory commission is required by statute to submit. In addition the advisory commission claims that Stephen W. Smith has already been appointed by the action of the Council and the Councilors in their brief suggest some irregularities in the Governor's method of nomination of candidates. In this situation it appears that the issues presented are not moot and should be determined.

It is claimed by the plaintiffs that Stephen W. Smith was appointed by the action of the Council in approving his nomination. They rely upon the statement in *Opinion of the Justices,* 98 N.H. 530, 533, 98 A.2d 635, 637 (1953), that in cases where an appointment is to be made by the "'Governor and Council' . . . the Governor and Council may be called upon to act together as a single board, depending upon the intent of the particular statute." They argue that on this basis the Governor only had one vote and Stephen W. Smith was

appointed by a four to two vote. We find nothing in the statute which dictates such a result. RSA 21:31-a, enacted in 1957 subsequent to our 1953 opinion, clearly states: "The phrase 'governor and council' shall mean the governor with the advice and consent of the council." Nothing in RSA 126-A:4 (Supp. 1973) expresses any contrary intent.

It is suggested in the brief for the Councilors that the practice of nominating a candidate while reserving the right to negate the nomination after a favorable vote by the Council is of doubtful propriety. We agree with this statement, particularly in the case of nonconstitutional offices, where the statutory construction mandated by RSA 21:31-a controls the appointment procedure. N.H. CONST. pt. II, art. 5. Unlike the procedure involved in the appointment of constitutional officers (N.H. CONST. pt. II, art. 46), where the Governor and Council have negatives on each other (N.H. CONST. pt. II, art. 47), appointments under RSA 126-A:4 (Supp. 1973) are to be made according to the direction of the legislature (N.H. CONST. pt. II, art. 5; *Opinion of the Justices*, 102 N.H. 195, 197, 152 A.2d 878, 880 (1959); *Opinion of the Justices*, 90 N.H. 568, 8 A.2d 597 (1939)), and the Governor can only exercise his negative by refusing to nominate or appoint. While we are not disposed to rule that either Mr. Bronstein or Mr. Smith has been appointed by accident, a strict reading of RSA 126-A:4 (Supp. 1973) and RSA 21:31-a would indicate that a person becomes a commissioner after the Council has confirmed an appointment by the Governor. Since this result was not contemplated by the Governor and in fact was contrary to his intention when he submitted the names of the nominees to the Council, we reject it in this case. *See Attorney-General v. Cross*, 75 N.H. 541, 542, 78 A. 281 (1910).

The principal question presented by the failure of the Governor and Council to appoint any of the nominees submitted by the advisory commission is whether RSA 126-A:4 (Supp. 1973) requires the Governor and Council to make an appointment from these nominees and make it now.

"Our Constitution provides that certain state officials may be appointed or elected only in a certain manner. Thus, New Hampshire Constitution, Part II, Article 67 provides that the Secretary of State and the State Treasurer shall be

chosen by joint ballot of the Senate and the House. This is an exclusive method which cannot be changed by the Legislature. Judicial officers, the Attorney General, coroners and military officers must be appointed by the Governor and Council and no change can be made in that method of selection. N.H. Const., Pt. II, Art. 46. As to the remaining officers the Constitution is clear that the Legislature has the power 'to name and settle biennially, or provide by fixed laws for the naming and settling, all civil officers within this state.' N.H. Const., Pt. II, Art. 5th." *Opinion of the Justices,* 102 N.H. 195, 197, 152 A.2d 878, 880 (1959); *Opinion of the Justices,* 90 N.H. 568, 8 A.2d 597 (1939); *see Opinion of the Justices,* 110 N.H. 359, 364, 266 A.2d 823, 826 (1970).

Where under our constitution the sole right to determine how a statutory office shall be filled lies with the legislature, the exercise of the delegated appointive power by the executive must be governed by the terms of the statute. *Opinion of the Justices,* 90 N.H. 568, 8 A.2d 597 (1939). The limitation on the power of the Governor and Council to appoint a commissioner of health and welfare under RSA 126-A:4 (Supp. 1973) was noted in *Opinion of the Justices,* 114 N.H. 165, 169, 316 A.2d 174, 176 (1974), when we stated that the Governor and Council were "required to appoint one of the two nominees nominated by the commission." It follows that the additional two nominations submitted subsequently by the advisory commission were permissible in view of the situation, but not required by statute. Additionally it should be noted that the sole responsibility for determining nominees is left to the commission and neither the Governor nor Council may dictate whom they shall nominate.

The statute by its terms gives to the Governor and Council the power of appointment. In accordance with RSA 21:31-a the sole power of appointment lies with the Governor subject to the "consent of the council." "The appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment." *Keim v. United States,* 177 U.S. 290, 293 (1900). In our opinion the limitation upon the Governor and Council to appointment from the advisory commission nominees does not render the act of appointment any less

discretionary. In the event for example of a disagreement between Governor and Council as to which of two nominees should be appointed, there is no mandate in the statute to require either the Governor or the Council to agree to the other's choice. While it appears the Council would have consented to two of the nominees, the Governor was unwilling to appoint any of the nominees.

We noted in *Opinion of the Justices,* 114 N.H. 165, 170, 316 A.2d 174, 177 (1974), that the length of time the vacancy had existed suggested that the "time for making an appointment [was] near at hand." However, we were not then nor are we now prepared to put a time limit upon the discretion of the Governor and Council to leave the office vacant when the legislature has failed to do so.

Our concern over the lapse of time which we then expressed applied not only to the expressed legislative intention that there be a commissioner of health and welfare, but also to the authority of a designated subordinate employee to continue to handle the financial affairs of the department. In *Opinion of the Justices,* 113 N.H. 675, 677, 312 A.2d 702, 703 (1973), we expressed the opinion that because of the emergency, in order for the purposes of the statute to be carried out, the Governor and Council could designate an employee of the department to temporarily handle the financial affairs of the department. However, we stated that "[h]is authority is only for a temporary period during the present emergency situation created by the existing conflict between the Governor and Council and the Advisory Commission." *Id.* Again, although we are not prepared to state how long is too long, we suggest that the words "temporary" and "emergency" denote some urgency. In this situation the responsibility for leaving the office vacant lies with the Governor.

*Petition dismissed.*

KENISON, C.J., and LAMPRON, J., dissented; the others concurred.