Merrimack
No. 87-413

GUY J. *& a.*

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF EDUCATION, *& a.*

July 13, 1989

*Disabilities Rights Center, Inc.*, of Concord (*Ronald K. Lospennato* and *Eileen L. Ordover* on the brief, and *Mr. Lospennato* orally), for the plaintiffs.

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, on the brief, and *Martha Pyle Farrell*, attorney, orally), for the State.

SOUTER, J. The plaintiffs bring this appeal from the dismissal by the Superior Court (*Cann*, J.; *Robert Hinchey*, Esq., Master) of their petitions for writs of mandamus or injunctions to order the commissioners of the State Departments of Education and Health and Human Services to agree on an adequate "procedure for settling disputes," RSA 186-C:7-a, III(e) (Supp. 1988), between the two departments about their respective responsibilities to serve "educationally handicapped children," RSA 186-C:7, I (Supp. 1988). We affirm.

The Division of Mental Health and Developmental Services of the State Department of Health and Human Services (HHS), *see* RSA 126-A:3, III (Supp. 1988), has responsibility for ensuring that services are provided to the developmentally disabled, RSA 171-A:1 (Supp. 1988), defined as those subject to handicapping disabilities originating before the age of twenty-two and "attributable to mental retardation" or other listed conditions, RSA 171-A:2, V (Supp. 1988). HHS may discharge its responsibility by contracting with so-called area agencies to provide the actual services. *Id.* :2, I-b (Supp. 1988); :18 (Supp. 1988).

The State Department of Education (DOE) has administrative responsibility to ensure that local school districts "provide a free and appropriate public education for all educationally handicapped children," RSA 186-C:1 (Supp. 1988), :13 (Supp. 1988), who are identified as individuals at least three but less than twenty-one years old, suffering from such conditions as mental retardation, emotional disturbance, or physical handicap, who for such reasons need special instruction, RSA 186-C:2, I and IV (Supp. 1988). DOE is authorized to act through a special education bureau to help the

school districts meet their obligations to the educationally handicapped under both State and federal law. RSA 186-C:3-a (Supp. 1988).

Because a given person may be both developmentally disabled and educationally handicapped, the responsibilities of HHS and DOE may overlap. The consequent obligation of each department to avoid duplication of services and expenses raises the danger that an applicant eligible for either developmental or educational services, or arguably for both, may be denied services entirely because each department points to the other as responsible. With the apparent object of minimizing this risk, the legislature has directed the commissioners of the two departments to "enter into a comprehensive, cooperative special education agreement," RSA 186-C:7-a, I (Supp. 1988), "which shall include a procedure for settling disputes regarding its administration or the financial and programmatic responsibilities of each department," *id.* :7-a, III(e) (Supp. 1988).

The two plaintiffs before us are both developmentally disabled and educationally handicapped. Each has applied for what the parties speak of as a residential placement at public expense, each has been turned down, and each claims to be the victim of a jurisdictional dispute between the two departments.

In the case of Guy J., the local school district denied a request to provide a residential placement for the then sixteen-year-old plaintiff, as did the area agency, one of whose officials later testified that the school district "may in fact be financially responsible" for the requested placement. The same witness, however, testified that HHS would fund the placement, through the area agency, if the legislature would appropriate funds for that purpose as the department had requested.

In the second case, that of James S., the eighteen-year-old plaintiff was ordered by his family to leave their house, and, at the time this proceeding began, lived in an apartment. The local school district denied funds for his residential placement on the ground that any justification for providing residential services was unrelated to his educational need. The local area agency denied a request for placement on the ground that it had no funds. When these decisions were brought to the attention of HHS, its commissioner responded that DOE was responsible for educational placement of a person of the plaintiff's age, and that the school district's refusal should be appealed. The area agency's decision was appealed first, however, although the result is not a matter of record here. In the meantime, the plaintiff did appeal the school

district's decision to DOE, whose hearing officer, *see* N.H. ADMIN. RULES, Ed 1127.02(a)(2), affirmed the denial below.

At the commencement of the relevant administrative proceedings in the case of James S., the two commissioners had not agreed upon the procedure to resolve inter-departmental disputes required by RSA 186-C:7-a (Supp. 1988). When James S.'s counsel requested them to adopt some mechanism to satisfy their statutory obligation, they responded by adopting the following appeal scheme. A party aggrieved by such an inter-departmental disagreement, who has first exhausted each department's administrative appeals process (including a so-called due process hearing required of DOE by the federal Education of the Handicapped Act (EHA), 20 U.S.C. § 1415(c)), may request a resolution of the jurisdictional dispute by a "joint decision" of the appropriate division and bureau, respectively, of the two departments. If the division and bureau cannot reach a decision, the request is to be referred to the two commissioners for their joint determination.

James S.'s counsel considered this mechanism inadequate, and, when no substitute was forthcoming, filed the instant petition for mandamus or injunction to compel the commissioners to adopt a more satisfactory procedure. That petition was joined with a virtually identical counterpart filed in the case of Guy J., and the two were heard jointly by the superior court, denied, and appealed together to this court. Each petition and appeal raises two claims: that the commissioners' agreement fails to satisfy their obligation under § 7-a, and that it violates paramount federal law.

As a threshold matter, the record dissuades us from disposing of the cases without reaching the merits of the claims raised. We do not decide whether a person could have a sufficiently cognizable interest to seek an order requiring the commissioners to address their statutory obligations, even though the petitioner might not be in a position to invoke a § 7-a dispute-resolution mechanism immediately. Nor do we pursue the issue whether there can be a dispute within the meaning of § 7-a when one department (DOE) does not claim the other is responsible, and the other (HHS) declines to provide the service for lack of funds, among other more or less clear reasons.

We should also note that we have not questioned whether the cases have slipped into mootness as fiscal years have passed and the terms of the relevant governmental appropriations may have changed. If such considerations were sufficient to render the cases moot, the issues raised would probably recur, since both plaintiffs are presently under age twenty-one and potential applicants for

services from the two departments, and would just as probably evade resolution. *See Royer v. State Dept. of Empl. Security,* 118 N.H. 673, 675, 394 A.2d 828, 829 (1978).

That having been said, we are still constrained to recognize that, insofar as the petitions seek writs of mandamus, the law requires their dismissal. Although a writ of mandamus is the proper remedy for a public officer's refusal to perform a ministerial act, *Rockhouse Mt. Property Owners Assoc. v. Town of Conway,* 127 N.H. 593, 602, 503 A.2d 1385, 1390–91 (1986), if "an official is given discretion to decide how to resolve an issue before him, a mandamus order may require him to address the issue, but it cannot require a particular result," *id.* (citations omitted). When the official has addressed the issue, mandamus will lie only to vacate the result of action taken arbitrarily or in bad faith. *See Guarracino v. Beaudry,* 118 N.H. 435, 437, 387 A.2d 1163, 1165 (1978); *Bois v. Manchester,* 104 N.H. 5, 9, 177 A.2d 612, 615 (1962).

This case is governed by the rules limiting the mandamus power over an officer with discretionary responsibility, since the obligation under § 7-a to devise a mechanism for resolving disputes clearly calls for the commissioners to exercise judgment and discretion. Because they have addressed their responsibilities by agreeing on a procedural mechanism, and because there is no claim of arbitrary or bad-faith conduct in agreeing on the mechanism they have adopted, a.writ of mandamus would serve no legitimate function. Nor do the plaintiffs fare any better by asking in the alternative for injunctive relief, there being no substantial distinction between mandamus and a mandatory injunction directing the performance of official public duties. *See Stern v. South Chester Tube Co.,* 390 U.S. 606, 609 (1968) (distinction formalistic); *Orange County v. Dept. of Transportation,* 46 N.C. App. 350, 384–85, 265 S.E.2d 890, 912 (in actions against public officials, distinction is without a difference), *review denied,* 301 N.C. 94 (1980).

The plaintiffs are not, however, without any means to review the agreement's conformity with State and federal law. Where a plaintiff has made a showing that the issues raised express a genuine controversy with the defendant, *see Hermer v. Dover,* 105 N.H. 108, 110, 192 A.2d 624, 625–26 (1963), as is the case here, we have traditionally regarded ill-pleaded requests for mandamus as petitions for declaratory judgment under RSA 491:22, *see Brouillard v. Governor and Council,* 114 N.H. 541, 545, 323 A.2d 901, 904 (1974); *see also Boehner v. State,* 122, N.H. 79, 83, 441 A.2d 1146,

1148 (1982) (declaratory judgment particularly appropriate to test constitutionality of statute where public policy requires a speedy resolution). In this case there may, indeed, be a further reason to treat the petition in this manner. Although § 7-a obligates the commissioners to enter into an "agreement," any such agreement will function as a rule of procedure, the validity of which would be subject to challenge by petition for declaratory judgment under RSA 541-A:7. We therefore address the merits as if on appeal from the dismissal of a petition for declaratory judgment.

The plaintiffs' claim that the agreement offends § 7-a itself rests on a single sentence they have excerpted from the agreement's provisions: "This agreement does not confer any substantive or procedural rights upon any applicant for, or recipient of services which may be available through either the Department of Health and Human Services or the Department of Education, or through any entity which operates under or receives funds from either department." As a consequence of this sentence, the plaintiffs argue, the agreed-upon mechanism for resolving inter-departmental disputes guarantees neither access to a forum nor the resolution of a dispute, and therefore fails to satisfy the commissioners' obligation.

■ If this argument has any plausibility, it depends entirely on isolating the language quoted and ignoring the bulk of the agreement. The terms that the plaintiffs fail to quote provide for the resolution of "any dispute" about the departments' "respective financial and programmatic responsibilities" at the behest of any individual who remains aggrieved after exhausting departmental administrative remedies, and the agreement calls for the rendition of a "joint" decision by the two departments or commissioners. With such explicit provisions for access and resolution, it is hardly reasonable to suggest that the offending sentence was meant to take away the remedy that the rest of the agreement provided. Admittedly, one is left to wonder why the commissioners wrote that their agreement conferred no "procedural rights" when in fact the agreement did exactly that and nothing else for two typewritten pages, but the puzzlement is not enough to erase those two pages or raise any serious doubt that the commissioners provided access and resolution. The most one can doubt is the workability of an appellate mechanism requiring two consistent votes out of two in order to reach a "joint decision," but that problem is not the subject of these petitions.

The plaintiffs' further claim, that the agreement conflicts with EHA, 20 U.S.C. §§ 1401 *et seq.*, and is consequently rendered unenforceable by the supremacy clause, U.S. CONST., art. VI, clause 2, calls for an introductory summary of EHA's objectives and its provisions for administrative and judicial review. *See generally Petition of Milan School District,* 123 N.H. 227, 230–31, 459 A.2d 270, 272–73 (1983); *Helms v. McDaniel,* 657 F.2d 800, 802–03 (5th Cir. 1981), *cert. denied,* 455 U.S. 946 (1982).

EHA is a plan for sharing federal revenues subject to conditions. To receive funds for use in educating handicapped children, a State must provide a "free appropriate public education" to all such children, 20 U.S.C. § 1400(c), and determine what is "appropriate" through the preparation of an "individualized education plan" for each child, § 1401(a)(18) and (19) (Supp. 1 1983).

Congress requires that applicants for educational services be afforded procedural rights that include an "impartial due process hearing," § 1415(b)(2), for litigating any dissatisfaction with "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child," § 1415(b)(1)(E). Although Congress has left it to the States to decide whether to conduct the due process hearing at the local, intermediate, or State level, § 1415(b)(2), if the initial hearing is local or intermediate, either the school district or the individual applicant may appeal the decision "to the State educational agency which shall conduct an impartial review of such hearing," § 1415(c), by an independent hearing officer, *id.* Unless so appealed, the decision of a local or intermediate hearing officer must be treated as final, § 1415(e), and the decision of a State hearing officer, be it original or appellate, must likewise be treated as final, subject only to the right of either party to bring further action in a State or United States District Court, *id.*

New Hampshire's response to EHA is RSA chapter 186-C (Supp. 1988), enacted in 1981, *see* Laws 1981, ch. 352; *Petition of Milan School District,* 123 N.H. at 230–32, 459 A.2d at 272–74, under which the State Board of Education has the responsibility to adopt rules for "[a]ppealing school district decisions regarding individualized education plans," RSA 186-C:16, IV (Supp. 1988), and for determining "eligibility for participation in approved programs," *id.* :16, V (Supp. 1988). The State Board's regulations provide that such appeals will be heard by "an Impartial Due Process Hearing Officer" appointed by the Commissioner of Education, N.H. ADMIN. RULES, Ed 1127.02(a)(2), whose decision may be appealed by "either party . . . to the appropriate court of

jurisdiction," *id.* (a)(13). As we have previously held, a judicial appeal may properly be taken either to the United States District Court for this district, 20 U.S.C. § 1415(e)(2), or to the State superior court, *John H. v. Brunelle,* 127 N.H. 40, 44, 500 A.2d 350, 351–52 (1985); *Petition of Milan School District,* 123 N.H. at 231, 459 A.2d at 274. (Each of these opinions erroneously assumed, however, that an interim appeal lay to the State Board prior to the availability of judicial review. *John H., supra* at 44, 500 A.2d at 351; *Milan, supra* at 231, 459 A.2d at 273. *Compare* N.H. ADMIN. RULES, Ed 1127.02(a)(13) *with id.* 1127.03.)

Against this background, the plaintiffs argue that the procedural mechanism established by the commissioners' agreement for resolving inter-agency disputes conflicts with the requirement of 20 U.S.C. § 1415(e)(2) that the decision of the State educational agency's hearing officer be final and subject to immediate judicial review. Because the agreement provides that the dispute-resolution mechanism may not be invoked prior to the exhaustion of other administrative remedies, including the "due process hearing pursuant to . . . Ed. 1127.02," the plaintiffs contend that the "[a]greement imposes a second tier of review on a decision the EHA deems final and binding unless appealed directly to a court . . . thus violat[ing] the EHA and, so, the Supremacy Clause of the United States Constitution." To support this position, the plaintiffs cite *Diamond v. McKenzie,* 602 F. Supp. 632, 639 (D.D.C. 1985) (parents may not be required to present their cases at a further hearing after action by the "due process" hearing officer); *Antkowiak by Antkowiak v. Ambach,* 638 F. Supp. 1564, 1570 (W.D.N.Y. 1986) (no authority in federal law for State Commissioner of Education to review State hearing officer's determinations of handicapped status and required services), *rev'd,* 838 F.2d 635 (2d Cir.), *cert. denied sub nom. Doe by Doe v. Sobol,* 109 S. Ct. 133 (1988); *Muth v. Smith,* 646 F. Supp. 280, 285 (E.D.Pa. 1986) (State hearing officer's report may not be treated merely as recommended findings and rulings for final action at further administrative level), *aff'd on other grounds sub nom. Muth v. Central Bucks School Dist.,* 839 F.2d 113 (3d Cir. 1988), *rev'd on other grounds sub nom. Dellmuth v. Muth,* 109 S. Ct. 2397 (1989); *Monahan v. State of Neb.,* 491 F. Supp. 1074, 1091 (D. Neb. 1980) (State hearing officer's report may not be limited to recommendation), *aff'd,* 645 F.2d 592 (8th Cir. 1982); *Helms v. McDaniel,* 657 F.2d at 805 (treatment of State hearing officer's report as mere recommendation violates EHA's finality requirement).

On the plaintiffs' view, indeed, the State mechanism's inconsistency with federal law does not stop with the "imposition" of a further administrative appeal on DOE's administrative review process in an inter-departmental dispute case. They cite the participation of the commissioner of education and the failure to provide certain procedural guarantees as further points on which the procedure provided by the commissioners' agreement fails to conform to EHA's mandatory standards. *See* 20 U.S.C. § 1415(b)(1) and (2).

These arguments suffer from one dispositive fault, however. As the plaintiffs' brief expresses their position, they assume the dispute-resolution mechanism is "imposed" upon an applicant for the free public education guaranteed as a condition of federal funding. That is, they assume that the mechanism is an element of the administrative process that an applicant must follow to obtain the judicial review that EHA mandates. A reading of the commissioners' agreement, however, reveals the falsity of this assuroption.

The agreement provides that "[a]n individual who remains aggrieved following the pursuit and completion of applicable administrative remedies . . . may submit a written request for a resolution of jurisdictional issues . . . ." Thus, resort to the mechanism is both optional with and open only to the "individual" claimant, who will be the child's parent or parents, or a surrogate for them. 34 C.F.R. § 300.514. No governmental or institutional party to any controversy subject to 20 U.S.C. § 1415(e)(2) can force an individual claimant to engage in any proceeding to resolve an inter-departmental dispute, a conclusion that is underscored by the State Board of Education's regulation, quoted above, providing that if "either party is aggrieved by the decision of the [due process] Hearing Officer, either party may appeal this decision to the appropriate court of jurisdiction." N.H. ADMIN. RULES, Ed 1127.02(a)(13). In short, an individual who desires immediate judicial review of a State hearing officer's decision has no obligation to pursue the inter-departmental dispute-resolution mechanism, and when the plaintiffs say that the mechanism is "imposed" upon claimants for benefits guaranteed under EHA they are plainly wrong.

We have been given no analytical basis or decisional authority for holding that a further level of administrative review available strictly at the claimant's own option robs the decision of the State hearing officer of any finality about which a claimant may complain. To the extent that we can find any legislative history

bearing on the sense of finality intended by § 1415(e)(2), it indicates exactly what one would expect, that the congressional purpose was "to provide and reinforce procedural protections for parents and children." 1975 U.S. CODE CONG. & ADMIN. NEWS 1438. Accordingly, the Supreme Court of the United States has observed that EHA "establishes an elaborate procedural mechanism to protect the rights of handicapped children." *Smith v. Robinson*, 468 U.S. 992, 1010–11 (1984). Finality is required for the benefit, that is, of the individual claimant.

We have found nothing, however, either in this legislative history or in judicial commentary upon the EHA to suggest that a claimant, who so desires, is not free to forego or defer exercise of the right to immediate judicial review in order to engage in a further State administrative proceeding. By way of contrast, in the previously noted cases on which the plaintiffs rely, the levels of pre-judicial review held to offend EHA could, in one guise or another, be imposed upon a claimant willy-nilly; in these cases, the applicant's right to finality in a State hearing officer's decision was denied or subjected to the option of an adverse party. Under the agreement in question here, that finality is merely subject to waiver at the discretion of the applicant for whose benefit it is guaranteed, and we accordingly find no conflict between a claimant's unfettered right to obtain immediate judicial review following a State hearing officer's determination and the claimant's unfettered discretion to seek further administrative review to resolve a conflict between administrative departments.

Nor is it apparent to us how the commissioner of education could have reached a more satisfactory accommodation between the EHA's insistence on judicially-appealable finality and § 7-a's obligation to agree on a mechanism to resolve inter-departmental disputes. It is significant that 20 U.S.C. § 1415(c) provides that the hearing officer who reviews a determination of an inferior educational unit, like a local school district, must act under the administrative auspices of "the State educational agency," which in New Hampshire is the State Department of Education. If, therefore, the § 7-a mandate were to be honored by injecting the dispute-resolution mechanism into the § 1415(c) hearing, federal law would demand that the inter-agency dispute be resolved by an officer appointed by one of the disputing agencies, the Department of Education. But the legislature probably did not intend to require the Commissioner of Health and Human Services to agree to any such procedure. That being so, the dispute-resolution mechanism will necessarily entail a separate hearing, and insofar as such a

separate hearing is required, we are at a loss to know how the commissioners could have done a better job than they did in reconciling the State law demand with the paramount federal finality requirement. It is probably revealing that the plaintiffs have not described, at least for us, any specific mechanism that they believe would improve on the procedural scheme they condemn.

■ We therefore affirm the dismissal of the petition insofar as it is treated as seeking a declaratory judgment, although we must enter one caveat. We have held that a claimant's opportunity under State law to seek further administrative review does not violate the claimant's federal right to immediate judicial review. We do not, however, have any occasion to consider whether the exercise of the State law option can affect a subsequent effort to exercise the federal right. The present petition does not, for example, address the time within which a judicial appeal must be filed in either State or federal court following the State hearing officer's determination, or the effect of a claimant's pursuit of the State dispute-resolution mechanism on the running of that time. We therefore emphasize that our opinion is no broader than the issue raised, and is confined to holding that the claimant's option to seek a further administrative review does not *per se* violate the federal requirement of administrative finality as a predicate to the right of immediate judicial review.

*Affirmed.*

THAYER, J., did not sit; the others concurred.