Original
No. 2000-653

PETITION OF CIGNA HEALTHCARE, INC. F/K/A HEALTHSOURCE NEW HAMPSHIRE, INC.

July 31, 2001

*Nixon Peabody LLP*, of Manchester (*Kevin M. Fitzgerald & a.* on the brief, and *Mr. Fitzgerald* orally), for the petitioner.

*Shaheen & Gordon, P.A.*, of Concord (*Arpiar G. Saunders, Jr.* and *Cinde Warmington* on the brief, and *Mr. Saunders* orally), for the respondents.

*Philip T. McLaughlin*, attorney general (*Walter L. Maroney*, senior assistant attorney general), filed a statement of the State as *amicus curiae* in support of Optima Healthcare, Inc.'s opposition to petition of CIGNA Healthcare, Inc.

NADEAU, J. The petitioner, CIGNA Healthcare, Inc., formerly known as Healthsource New Hampshire, Inc. (CIGNA), petitions for the issuance of writs of mandamus and prohibition to the Hillsborough County Probate Court (*Cloutier*, J.). We grant the petition for prohibition.

The following facts appear in the record. Elliot Hospital (Elliot) and Catholic Medical Center (CMC) are community hospitals in Manchester, organized as nonprofit charitable institutions. In 1994, the supporting organizations for Elliot and CMC merged to form respondent Optima Health, Inc., a new supporting organization for both hospitals. Respondent Optima Healthcare Corp. (referred to, collectively with Optima Health, Inc., as Optima) is a regional joint operating company that may be loosely described as the parent

corporation of Optima Health, Inc. As such, it has exercised management authority over Elliot and CMC.

On March 10, 1998, the New Hampshire Attorney General, as the director of charitable trusts, issued a report addressing concerns over Optima's management of the hospitals, particularly its decision to consolidate all acute care services at the Elliot facility, thereby effectively terminating CMC's charitable mission to serve as an acute care Catholic hospital in Manchester. Thereafter, two special boards of trustees, appointed by agreement between the attorney general and Optima, decided that Elliot and CMC should disaffiliate and that each should separately serve as an acute care hospital.

On February 25, 1999, the attorney general and Optima jointly petitioned the probate court to oversee the disaffiliation process. CIGNA moved to intervene in the probate proceedings, alleging that it was a party to certain payor contracts with Optima, Elliot and CMC under which Optima and the hospitals owed CIGNA more than $1.8 million. The probate court allowed CIGNA limited participation subject to restrictions and conditions imposed by the court.

On April 27, 1999, the probate court appointed a special master pursuant to RSA 547:37 (1997) and issued its second interim order ruling, in part:

> The Court finds that during the period in which this Court shall exercise jurisdiction over the charitable assets of Optima, Elliot Hospital, CMC and their subsidiaries, claims of creditors and other claimants against those assets are, or may be inextricably linked to the proper disposition of such assets. Therefore, the Court shall exercise its concurrent jurisdiction with the Superior Court over cases involving charitable uses and trusts to adjudicate any claim by a creditor or claimant as to which the Court may find, on motion by any party, or on petition by any creditor or claimant, is reasonably likely to affect the disposition of charitable assets under the supervision of this Court.

While the probate action was proceeding, Optima and CIGNA disputed the amounts due under the payor contracts and to which party they were owed. Optima contended that as of March 31, 1999, it was owed $15,114,897 under the contracts, and that CIGNA had failed to provide Optima with reconciliation data as required under the contracts. CIGNA maintained that it was owed more than $1.8 million, and purported to avail itself of contractual set-off rights by withholding periodic payments due to Optima under the contracts.

Optima sought relief in the probate court while CIGNA claimed that the parties were contractually bound to arbitrate their disputes.

On June 23, 2000, CIGNA attempted to commence arbitration proceedings before the American Health Lawyers Association (AHLA). CIGNA also petitioned the superior court to compel arbitration of disputes regarding contract years 1999 and 2000. Optima filed motions in both the probate court and the superior court seeking to compel CIGNA to withdraw its superior court petition and to dismiss or stay its request for arbitration with the AHLA. Optima also filed motions in probate court seeking a declaration of the parties' interests under the payor contracts, an award of damages to Optima and an order requiring CIGNA to resume periodic payments under the contracts.

The probate court granted Optima's motions to halt CIGNA's arbitration efforts and ordered CIGNA to cease and desist from withholding payments to Optima under the payor contracts. The court also approved a recommendation by the special master concluding that by participating in the probate court proceedings, CIGNA had consented to the probate court's jurisdiction and waived its right to compel compliance with the dispute resolution provisions of the payor contracts.

CIGNA filed a petition for original jurisdiction with this court, pursuant to Supreme Court Rule 11, alleging that the probate court erred by: (1) declining to rule on CIGNA's motions to dismiss for lack of subject matter jurisdiction; (2) enjoining CIGNA's exercise of its set-off rights under the payor contracts while conceding that none of the requirements for issuing an injunction had been met; (3) declining to rule on CIGNA's motions for the posting of an injunction bond; (4) declining to rule on CIGNA's motions to compel arbitration pursuant to the payor contracts of disputes concerning contract years 1999 and 2000; (5) ordering CIGNA to withdraw its motion to compel arbitration, pending in superior court, contrary to the procedure set forth in RSA 542:3 (1997); and (6) ruling that CIGNA had waived its contractual arbitration rights by intervening as a creditor.

CIGNA seeks: (1) a writ of mandamus to order that the injunction against further set-off be dissolved; (2) a writ of mandamus holding that the probate court lacks subject matter jurisdiction over the contractual dispute and ordering the probate court to dismiss the proceedings or refer them for arbitration; and (3) a writ of prohibition barring the probate court from further attempting to adjudicate claims between CIGNA and the hospitals. Optima argues that the requested writs should not issue because the legal stan-

dards for mandamus and prohibition have not been met and because the probate court's actions were both within its jurisdiction and proper.

■■ Mandamus and prohibition are extraordinary writs. *See, e.g., Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 127 N.H. 593, 602 (1986); *Petition of Mone*, 143 N.H. 128, 132 (1998). A writ of mandamus is used to compel a public official to perform a ministerial act that the official has refused to perform, or to vacate the result of a public official's act that was performed arbitrarily or in bad faith. *See Guy J. v. Commissioner*, 131 N.H. 742, 747 (1989). This court will, in its discretion, issue a writ of mandamus only where the petitioner has an apparent right to the requested relief and no other remedy will fully and adequately afford relief. *See Guarracino v. Beaudry*, 118 N.H. 435, 437 (1978).

■■ A writ of prohibition is used "to prevent subordinate courts or other tribunals, officers or persons from usurping or exercising jurisdiction with which they are not vested." *Hillsborough v. Superior Court*, 109 N.H. 333, 334 (1969). This court exercises its discretionary power to issue such writs "with caution and forbearance and then only when the right to relief is clear." *Id.*

Optima argues that "[w]hile pled as a request for Mandamus, [CIGNA actually] seeks a Writ of Prohibition relative to its jurisdictional claim." We agree that although CIGNA has petitioned for a writ of mandamus to compel the probate court to rule on the issue of its jurisdiction, a writ of prohibition is more suitable to CIGNA's claims. For the reasons set forth in this decision, we conclude that issuance of a writ of prohibition is proper in this case. Accordingly, CIGNA's petition for writ of mandamus is denied.

Optima argues that a writ of prohibition should not issue in this case because (1) CIGNA has an adequate appellate remedy; (2) the challenged "injunction" does nothing more than preserve the status quo; and (3) the probate court does not clearly and unambiguously lack jurisdiction. We will not "interfere by extraordinary action with the ordinary process of appeal unless there is a clear case of necessity." *Id.* at 334. Nevertheless, "we will exercise our original jurisdiction in circumstances where the parties desire, and public need requires, a speedy determination of the important issues in controversy." *Petition of Mone*, 143 N.H. at 132 (citation omitted).

Although the dispute before us has not prevented the disaffiliation of Elliot and CMC from going forward, the matter of the probate court's jurisdiction is an important public issue, as evidenced by the

attorney general's *amicus curiae* filing. We conclude that resolution of that issue at this time is warranted.

Optima further contends that a writ of prohibition should not issue because the probate court's order barring CIGNA from taking further set-offs under the payor contracts served merely to maintain the status quo. The cases cited by Optima in support of this argument, however, are inapposite. In *American Federation of Employees, Local 572 v. Dover*, 115 N.H. 491, 492 (1975), and *Hillsborough v. Superior Court*, 109 N.H. at 334, we declined to issue writs of prohibition to stay lower court orders that merely preserved the status quo pending a subsequent proceeding. Here, CIGNA seeks not to stay the probate court's orders pending further proceedings, but rather to vacate them due to that court's lack of subject matter jurisdiction.

Finally, Optima argues that a writ of prohibition will not lie in this case because "it cannot be argued that the Probate Court's finding of jurisdiction is a plainly wrong interpretation of an unambiguous statute." We will address this contention in conjunction with Optima's argument that the probate court in fact has jurisdiction over the instant matter.

Optima asserts that the probate court has jurisdiction over its contractual dispute with CIGNA under RSA 547:3, II(a) (Supp. 2000), which grants the probate court concurrent jurisdiction with the superior court over "[c]ases involving charitable uses and trusts, other than express trusts, as that term is defined in RSA 564-A:1, I." Optima further asserts that it and the hospitals are indisputably charitable trusts and that the payor contracts are assets of those trusts. Optima concludes that where the probate court found that the third party creditors' claims against Optima "are, or may be *inextricably linked* to the proper disposition of charitable assets" (quotation and brackets omitted), the instant case is one involving charitable trusts within the meaning of the statute.

"The probate court is not a court of general jurisdiction. Its powers are limited to those conferred upon it by statute." *In re Estate of O'Dwyer*, 135 N.H. 323, 324 (1992). We must therefore interpret the statute conferring jurisdiction upon the probate court to determine whether that jurisdiction encompasses the dispute before us. In matters of statutory interpretation, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *K & J Assoc. v. City of Lebanon*, 142 N.H. 331, 333 (1997) (quotation omitted). We first look to the statutory language, and whenever possible construe that language according to its plain and ordinary meaning. *See Appeal of*

*Naswa Motor Inn*, 144 N.H. 89, 90 (1999). Accordingly, our first task is to discern, if possible, the plain and ordinary meaning of the statutory language: "[c]ases involving charitable uses and trusts." RSA 547:3, II(a).

Optima urges an expansive interpretation of the term "involving," asserting that "it is clear that a claim against the asset of a charitable trust is a case 'involving' the trust and, hence . . . within the jurisdiction of the Probate Court." We disagree. "The general policy of the law in this State has been to confine the contentious jurisdiction of the probate courts within narrow limits . . . ." *Hayes v. Hayes*, 48 N.H. 219, 229 (1868). Accordingly, we have declined to interpret indefinite statutory language connoting some relationship to probate matters as expanding the probate court's jurisdiction to include determination of every issue having some effect upon a matter properly before it. Thus, in *In re Estate of O'Dwyer*, we held that a statute conferring upon the probate court jurisdiction over "'all matters and things of probate jurisdiction *relating to* the sale, settlement and final distribution of estates of deceased persons'" did not grant the court jurisdiction to determine title to real estate in order to establish whether it was an asset of the estate. *In re Estate of O'Dwyer*, 135 N.H. at 324 (quoting former RSA 547:3 (Supp. 1991) (amended 1992, 1993 & 1997)) (emphasis added). In *Hayes v. Hayes*, 48 N.H. at 225, we held that the same language did not grant the probate court jurisdiction to determine conflicting claims to interest accrued under a trust created by will, for "[i]f the [probate] court can do . . . this, it is quite clear that it must be in the exercise of a general equity jurisdiction over all trusts created by will."

Optima questions the applicability of these cases because they predate the Omnibus Justice Act of 1993, which substantially revised RSA 547:3 and, in particular, added subpart II(a). *See* Laws 1992, 284:49. Optima argues that the legislature sought to expand the probate court's jurisdiction through the Omnibus Justice Act so that the court would be able "to fully hear and determine the cases before it." We agree that the Omnibus Justice Act reveals a legislative intent to expand probate court jurisdiction, but to a limited extent. The legislature intended, for instance, to grant the probate court power to determine title to assets properly within its jurisdiction by declaratory judgment or a quiet title proceeding, a power the probate court previously lacked. *See* RSA 547:11-b (1997), :11-c (Supp. 2000); *In re Estate of O'Dwyer*, 135 N.H. at 324. Thus, the probate court could properly determine whether the payor contracts at issue were assets of Optima, Elliot, CMC or some other

party, and could determine which of the resulting charitable trusts would retain or acquire those contracts in the disaffiliation process. *See* RSA 547:3-h (1997), :11-b, :11-c.

■■ The Omnibus Justice Act, however, which put into place many recommendations of a supreme court long range planning commission, was not intended to expand the probate court's jurisdiction beyond the subject matter necessary for it to handle efficiently matters over which it had jurisdiction. The legislature did not intend that the probate court exercise concurrent jurisdiction with the superior court over every case in law and equity which might result from the existence of a trust. Nor did it intend to force a party entitled to a jury trial in superior court to first subject itself to a trial before a probate court judge and then to appeal an adverse decision to the superior court for jury trial. We hold the statutory provision that the superior court will take "cognizance" of matters in the probate court for which there is a right to trial by jury did not deprive litigants of the right to apply for relief in superior court without first applying for the same relief in the probate court. *See* RSA 491:7 (1997).

The legislature is presumed to know of the narrow construction we have given previous statutes conferring jurisdiction on the probate court. *Cf. Waterman v. Lebanon*, 78 N.H. 23, 24 (1915). If the legislature intended to confer the expanded jurisdiction on the probate court that Optima advocates, "they would not, we think, have left their intention to be inferred from a single doubtful expression . . . but would have conferred the authority in plain and explicit terms." *Hayes*, 48 N.H. at 230.

The current third party litigation between CIGNA and the hospitals does not require resolution before disaffiliation occurs. In fact, disaffiliation has already occurred. The purpose of the enabling legislation under the omnibus law was to provide that issues directly involving a trust or estate that had to be decided in order for the probate court to exercise its authority could be handled as part of the probate proceeding rather than requiring the probate proceeding to be stayed while ancillary issues were resolved in superior court.

■■ We hold, therefore, that RSA 547:3 does not confer upon the probate court general jurisdiction to adjudicate contractual claims between charitable trusts and third parties. We also conclude that in light of our prior rulings on the probate court's jurisdiction, the court's lack of jurisdiction in this case was sufficiently clear to warrant a writ of prohibition. Accordingly, we order the probate

court to cease the exercise of jurisdiction over the contractual disputes between Optima and CIGNA, and we vacate all orders issued by the probate court under such purported jurisdiction. Given this disposition, we need not address any of CIGNA's other claims of error.

*Petition for writ of prohibition granted;*
*petition for writ of mandamus denied.*

DALIANIS and DUGGAN, JJ., concurred; MANGONES and MOHL, JJ., superior court justices, specially assigned under RSA 490:3, concurred.