HAYES, APPELLANT *v.* HAYES, APPELLEE.

Where a will creates a trust and appoints the trustee, the court of probate, in
  which the will was proved and the estate administered, has not jurisdiction
  to determine conflicting claims to the income of the trust fund and compel
  the trustee to execute the trust according to the intent of the will.

APPEAL from a decree of the probate court.

The will of Reuben Hayes, dated February 11, 1864, and proved in the same year, contained the following provision : "I order and direct my executors, as soon as is convenient after my decease, to convert my land at the West, bank·stock in Lake Bank and in Rochester Bank, and money due on notes, into cash, and fund the same where in their opinion it shall be safe ; and divide the interest from time to time arising from said fund among my children, grandchildren, and my wife, according to their wants and necessities as shall appear just and equitable in their opinion ; and said fund is to be continued as long as my executors shall deem proper."

Hiram Barker and Reuben Hayes, jr., were appointed executors ; the property was converted into money, and interest to the amount of $3,060

had accumulated on the 20th of June, 1867. The testator left Patience Hayes, his widow, four children, Reuben, James, Elihu, and Maria, wife of Hiram Barker, nine grandchildren, six of them children of Reuben Hayes, one of Elihu Hayes, and two of Maria Barker; and two children have been born to Elihu Hayes since the testator's death. The executors appropriated to the widow $166.67, June 20, 1865, $250, June 20, 1866, and $250, June 20, 1867; and, not being able to agree on the distribution of the residue of the interest, they have made no further distribution. It is agreed that the wants and necessities of some of the children and grandchildren are greater than of others.

Hiram Barker, one of the executors, received and invested the money belonging to the trust fund, and had the fund in his actual control. On the third Tuesday of February, 1867, he settled his account and was charged with $3,060, for interest received on the fund.

On the 20th of June, 1867, Reuben Hayes, in behalf of himself and others, filed his petition in the court of probate, setting forth the foregoing facts, and praying that the court would order the income of the fund to be distributed, determining the amount and the proportion to which each of the aforesaid parties was entitled. On a hearing the probate court decreed that the interest accumulated and unexpended should be paid in equal shares to all the children and grandchildren, excluding the grandchildren born after the testator's death. From this decree Elihu Hayes and others appealed, and assigned the following reasons:

1. Because the judge of probate had no jurisdiction.

2. Because he decreed the interest to be equally divided among the *cestuis que trust*, without regard to their respective wants.

3. Because he made no investigation into their relative wants and necessities.

4. Because he excluded the after-born grandchildren.

*I. A. Eastman*, for appellants.

*C. W. Woodman*, for appellees.

The appellees contend:

I. That the discretion to be exercised in the distribution of the fund is personal to the executors, and, in case of their disagreement, cannot be exercised by the court. Hill on Trust. 715, and the cases hereafter cited.

II. That it is the intention of the testator that the income should be divided during and at the expiration of each year. The will says "the interest from time to time arising from said fund." The custom of yearly computation of interest, and semi-annual dividends on stock, and coupons on bonds, in connection with the probable wants of the parties entitled thereto, the support of the aged widow and some at least of the children, and the support and education of some if not all of the grandchildren, indicate such intention.

III.   The executors disagreeing, the court will execute the trust as near as it can be done, which is by dividing the interest among all the *cestuis que trust* equally.   Hill on Trust. 721, 722, 723; *Emery* v. *Judge of Probate*, 7 N. H. 142; *Brown* v. *Higgs*, 4 Ves. 708; 5 *Id.* 495; *Kemp* v. *Kemp*, 5 Ves. 849; *Longmore* v. *Brown*, 7 Ves. 124; this is directly in point; *Kennedy* v. *Kingston*, 2 J. & W. 431; *Brown* v. *Pocock*, 6 Sim. 257; case of division equally at death in default of appointment; *Collins* v. *Carlisle*, 7 Mon. 14; 2 *Sug. Pow.* 179, 180, 6th ed.; *Fowler* v. *Hunter*, 3 Y. & J. 506; case of invalid appointment, equal division ordered.   Hill on Trust. 70, says as to the discretionary power of selection, the court will not interfere except to set aside an improper appointment.   *Portsmouth* v. *Shackford*, 46 N. H. 423; *Wethers* v. *Yeadon*, 1 Rich. Eq. 324, (S. Car.,) case of wrongful delegation of the discretion.

IV.   It being agreed that the whole income of the estate to be funded, both before and after it was funded, for the three years from the death of the testator was $3,060, it is for the court to distribute so much thereof as has not been distributed by the executors; and in dividing the interest which accrued from the death, and not merely that which accrued from the end of one year after the death, the court will be sustained by the consideration:

1.   That the widow was clearly entitled to interest from the death, because she took that and some other provisions in lieu of dower.   *Williamson* v. *Williamson*, 6 Paige 298; *Parkinson* v. *Parkinson*, 2 Brad. (N. Y. Surr.) 79.

2.   And that the children, for whose present support the testator would be presumed to provide, would be equally entitled to the interest from the death.   *Hepburn* v. *Hepburn*, 2 Brad. (N. Y. Surr.) 74; 24 U. S. Dig. 195, cites *in re Williams*, 1 Redf. (N. Y. Surr.) 208. It is true that the testator made other provision for the support of his sons Elihu and James, and gave a farm to his son Reuben, and $1500 bank stock to his other child Maria, and if the question was as to a legacy of a sum of money given to these children, interest thereon might not be allowed till one year from the death; but the legacy here is the *interest itself* on certain notes, bank stock, etc., which are to be funded; and it is settled that in such cases the legatees draw interest on the property till it is funded, what it earned, if that can be ascertained; the English rule seems to be to allow three per cent. interest until funded.   *Loring* v. *Woodward*, 41 N. H. 391; *Pollard* v. *Pollard*, 1 Allen, 490, (Mass.;) Hill on Trust. 389.   The executors were not directed as to any particular property in which to fund the residuum.   It was left to their discretion.   They were thus at liberty to let good investments and good loans stand as they were made by the testator, and as they were received by the executors.   The debts were to be paid in three months, and the fund to be established as soon after his death as it was convenient, and the income thereof divided.   There is no embarrassment upon the executors in requiring them at the end at least of the first year to divide the interest that had accrued during the year.

3. And that, as the testator directed that the widow, children and grandchildren should receive the interest as their *wants and necessities* might require, he must have intended that, if they or any of them were in need at any time within the year after his decease, they should be relieved from the application of a portion of this interest; that the income should be distributed from the death. See 1 Jar. on Wills, 542, 543, 544–5, note 1; *Douglas* v. *Congreve,* 1 Keene 427; Hill on Trustees, 389; 2 Williams Exec's, 2 Am. ed., 997, 998; *Williamson* v. *Williamson,* 6 Paige 298; *Hewitt* v. *Morris,* 1 Turn. 241; *Chesnut* v. *Strong,* 1 Hill's Ch. 123.

V. Are the after-born children of E. Hayes entitled? We admit that this seems doubtful upon the authorities. *Hill* v. *Bank,* 45 N. H. 270; *Jenkins* v. *Freyer,* 4 Paige's Ch. 53; 2 Jar. on Wills, 96. "Where the gift is to a class payable at the death of the testator, or specially to those living at that time, then only such will take." "All gifts to children preceded by an *anterior interest* will embrace the objects existing at the death of the testator, and those who may come *in esse* before the determination of such interest." Here the income, *to accrue after the death,* is given. It is not payable at the death, because it does not exist. It is not specially given to those living at that time; but it is not preceded by an *anterior interest.*

*Additional brief of C. W. Woodman for appellees.*

The petition to the judge of probate in this case is dated June 21, 1867, and, among other things, represents that Hiram Barker, executor, having the whole charge of the estate, settled his account in the probate court on the third Tuesday of February, 1867, and was therein charged with interest upon the *fund* at the rate of $1,020 per year, from the death of the testator, June 20, 1864; that the executors were unable to agree upon any disposition of said interest, except what was given to the widow of the testator; and prays the court to order said Barker to pay to the children and grandchildren of the testator their respective portions of said interest. The agreement of facts is only a substitute for a report of an auditor appointed, but not called out, by reason of the counsel's agreeing upon the facts.

It was the intention of the testator that the income, dividends of stock, and interest should be expended as the same were received each year. This is reasonably to be inferred, and also that in making the application regard should be had to the wants and necessities of the *cestuis que trust.*

In refusing to make any application at all of the income accruing from June 20, 1864, to June 20, 1867, there is an abuse of the trust which would justify a resort to the equity side of the supreme court to compel some distribution. But it does not therefore follow that a remedy cannot be had in the probate court, more direct, convenient and less expensive.

It is competent for the legislature to give to that court jurisdiction as

extensive in all matters relating to the estates of deceased persons, and to trusts and trustees as is given to the supreme court. It might constitute the probate court an inferior court of equity. The right of appeal would protect parties from any imperfection in the learning or the judgment of the latter. Every judge of probate in his county has jurisdiction, * * * "of all matters and things of probate jurisdiction relating to the sale, *settlement* and *final distribution* of the estate of deceased persons." Gen. Stats., 351, sec. 2.

The judge may from time to time "make *such orders and decrees* as he may think *just and reasonable* in relation to the sale, management, investment and *disposition* of the trust property and the *settlement of the account* of the trustee." Gen. Stats., 380, sec. 9.

The proper distribution of the moneys that may be found in the hands of the administrators or trustees upon settlement of their accounts is authorized by these acts, and is necessary for the final settlement of estates of deceased persons.

The probate court has "the settled and general jurisdiction existing at common law in the ordinary or ecclesiastical courts" over intestate estates. *Kimball* v. *Fisk*, 39 N. H. 119. The ecclesiastical court could try temporal matters where it became necessary ; but they did it by the rules of the common law. 2 Burn. Ecc. Law, 49. By statute has been given to the probate court full jurisdiction over trusts and trustees, &c., which were well known powers previously and since exercised by courts of chancery. It would be difficult to find phraseology that could enlarge the jurisdiction which is now given to the probate court over the disposition of trust property and the settlement of the accounts of trustees. The probate court could enforce the performance of a proper order not only by allowing a suit upon the bond, but by process of contempt which is incident to every court of such enlarged jurisdiction. This might be the only efficient remedy in respect to some orders in those estates where the trustees give no bonds. The power being necessary, it is incident to the jurisdiction, otherwise the grant of jurisdiction fails. To enforce a proper order of the ecclesiastical court after sentence of excommunication, provision was made to signify the facts into chancery, (2 Burn. Ecc, Law, 51,) and obtain a writ of *de excommunicato capiendo* by which the party was imprisoned until he obeyed the order of the ecclesiastical court. Imprisonment was the means of enforcing obedience, and is still practiced by writ *de contumace capiendo.* Here no provision is made for such a writ. But the probate court, unlike the ecclesiastical court, having by statute full jurisdiction, can obtain the same remedial results by imprisonment, if it be conceded that it has power to hold the party in contempt for a disobedience of its just and reasonable order. The object would be obtained speedily and effectually, and no harm could ensue. Like emergencies might arise also as to administrators and executors, where an adequate remedy could not be had by suit on the bond or in any other way.

The gift of the income being to the *cestuis que trust,*—the intention of the testator being manifest that they should presently enjoy it, unequally though it might be, if occasion should require,—the grandchil-

dren actually needing the income for the purposes of acquiring an education justified by their position in society, and in some cases for their actual support, it must be an abuse of the trust for the executors wholly to withhold it from them ; and a period can be fixed by the court of probate, beyond which it would, in its opinion, be neither just nor reasonable for the executor to withhold it. If so, then the court should so declare it, and order its payment over. The payment then becomes a duty, and being a duty, the income is distributable, and it is only for the court to determine in what *proportions* it shall be paid to the *cestuis que trust*. Then arises the question whether the executors so disagreeing as not to be able to exercise a discriminating discretion, the court will exercise its own discretion, substituting that as the will of the testator.

The objection to this course, whereby the court may be said to *make* a will for the testator, and the court be put to great trouble and the estate to great expense, has established the doctrine, through a long line of precedents, part of which are cited in my first brief, that in such cases all being entitled to a *substantial* part of the income it shall be divided equally among the *cestuis que trust;* thereby approximating as near as possible to the intentions of the testators. And if the probate court has not power to enforce by summary process its order of distribution of such portion of the income as it may think should be paid, the order can be made and the parties be left to pursue their remedy on the executor's bond, or perhaps by an action of assumpsit or debt for such portion of the legacy as the court orders to be paid.

Although the statute authorizes the probate court, in a case where the testator requests no bond to be given, to require a bond whenever the trustee does not faithfully execute the trust, and, upon his neglect to give such bond, to treat the trust as declined, this would in some cases present an imperfect and inadequate remedy for the *cestuis que trust*. If such trustee was ordered to account, for instance, there would be no mode of enforcing such order unless by process of contempt and imprisonment, and in some very large and complicated estates there might be no other mode for ascertaining and reaching all the effects.

PERLEY, C. J.   The will, which created this trust, required the fund to remain in the hands of the trustees for an indefinite period, and the execution of the trust was no part of the administration of the estate.   Here, as was said in *Leavitt* v. *Worcester*, 14 N. H. 566, "the two characters of executors and trustees are united in the same persons, but the liabilities of each are as distinct as if the persons were different."   If the trustees had been different persons, when a sum of money belonging to the trust fund was found in the hands of the executors on the settlement of their account, the decree would be that the executors pay that sum over to the trustees.   When paid over pursuant to the decree that sum would be administered and no longer be part of the estate, but the legal property of the trustees with the beneficial interest in the *cestuis que trust* under the provisions of the will.   The jurisdiction of the probate court in the administration of that fund would be exhausted

by the decree ordering it to be paid to the trustees; for the remedy, if it were not paid according to the decree, would be, not by further proceedings in the probate court, but by suit on the bond of the executors, or against them or the estate, on the ground of their liability as executors. *Felton* v. *Sawyer*, 41 N. H. 202.

Until there had been a settlement of the administration account, and some decree or order showing that this fund was in the hands of the trustees as such, they would not be chargeable with the fund as trustees, nor bound to appropriate the income; because, until such settlement and decree, it would be doubtful whether the estate would not be required for other purposes. It must therefore be assumed that this fund had been adjudged by decree of the probate court to the trustees as the fund created by the will; otherwise there is no pretence that the trustees are bound to distribute the income of a fund which they never held in their capacity of trustees; and the case stands as if the trustees were different persons from the executors, and the executors had been decreed to pay the fund to the trustees, and had paid it accordingly. We cannot, therefore, treat this fund as part of the estate still in the course of administration. The executors cannot be charged as trustees until they are discharged as executors. If this application can be maintained, it must be on the ground that, after an estate, out of which a trust fund has been created by will, has been fully administered, the court of probate has jurisdiction to give a construction to the will, to decide on conflicting claims to the income of the fund, and enforce the general execution of the trust according to the intent of the donor. For this petition calls on the court to determine who are the parties entitled to the benefit of the trust, to give a legal construction to the provisions of the will, to enter on an investigation of the circumstances and wants of the different *cestuis que trust*, and enforce the division and application of the income according to the intent of the will which created the trust. If the court can do all this, it is quite clear that it must be in the exercise of a general equity jurisdiction over all trusts created by will. It is not a claim to interfere for the preservation and safety, or for the profitable investment, of the fund; it involves the construction of the bequest, the question what parties are entitled to the beneficial interest in the fund, and the general enforcement of the trust, covering the whole ground of equity jurisdiction over the subject.

It is important to observe that these trustees have given no bond in the probate court, to which resort might be had in a suit at law to enforce performance of the decree of that court. The fact that this trust was created by will gives the probate court no practical advantage in making the necessary investigation, or in enforcing the orders and decrees of the court; for the trustees have given no bond, and the estate, out of which the fund was derived, is administered and beyond the control of the probate court. So far as the nature and reason of the case are concerned, the probate court might equally well entertain jurisdiction over a trust created by deed; for this trust, though created by will, is now transferred beyond the control of the court by a complete administration of the estate, and no bond has been taken under the statute.

The court of probate cannot derive this jurisdiction over trusts created by will, under the general grant of jurisdiction "of the probate of wills and of granting administration and of all matters and things of probate jurisdiction relating to the sale, settlement, and final distribution of the estates of deceased persons." For this sum of money, when it was found by the decree of the judge to belong to this trust fund, being then in the hands of the trustees, was finally administered and distributed as much as if it had been decreed to the trustees in their own individual right. After that, the legal interest vested in the trustees, and the money did no$_t$ belong to the estate. It was not covered by the bond of the executors, which was conditioned for the faithful administration and final distribution of the estate according to the decree of the judge. *Leavitt* v. *Worcester*, 14 N. H. 566.

It has been held that our courts of probate have an extensive jurisdiction not conferred in express terms by statute, but implied by reference to the powers and practice of the ecclesiastical courts in England. *Morgan* v. *Dodge*, 44 N. H. 258. For the extent and limitation of the jurisdiction in our courts of probate, when not fixed by statutory provisions, we must therefore resort to the ecclesiastical law. I find nothing in that law which affords any support to the claim of jurisdiction here made for our courts of probate. The ecclesiastical courts do not appear to have intermeddled at all with the execution of trusts, or with the charge and disposition of trust funds in the hands of the trustees, whether the trusts were created by will or otherwise. The trustees did not give bonds or settle any account in the ecclesiastical courts; and there was no law or practice which required trustees appointed by will to give bonds or account in the probate court here until the statute of 1820. When a fund was distributed to a trustee under a will, the ecclesiastical courts, so far as I can discover, had nothing further to do with it; but the trustees, as in cases where the trust was created by deed, were subject to the general jurisdiction in equity, where the construction of the will which created the trust was settled, the conflicting rights of parties determined, and the execution of the trust enforced by the process of the court.

Where our statutes have not introduced a change, the ecclesiastical law may be resorted to as a safe guide for the interpretation of our probate laws. The substance of our system is borrowed from that law, and the methods and remedies in our courts of probate, except where others are provided by statute, follow the general course of procedure in the ecclesiastical courts. One peculiarity in the jurisdiction of those courts is that they have no direct process for enforcing their own decrees. They can "neither imprison, fine, amerce;" *Gilbert Godfrey's Case*, 11 Co. 44, a; and Blackstone says, 3 Com. 101: "The point in which these jurisdictions are most defective is that of enforcing their sentences when pronounced, for they have no other process but that of excommunication." Resort was necessarily had to the temporal courts for aid to enforce the sentences of the ecclesiastical jurisdiction. Blackstone, *Ibid.* In this respect our law has followed the examples of the English, and has not, as a general rule, confided the execution of their

own decrees to the courts of probate, but left them to be enforced by suits at law on the bonds required to be given to secure performance of the orders and decrees of that court. The general policy of the law requires that security shall be given by bond, that parties who act under the authority of the probate court, and are held to account in that court, shall discharge their duties faithfully and obey the orders and decrees of the court, leaving the rights of parties interested to be enforced by action in other courts on the bonds required to be given in that court. There would seem to be great reason for holding that the probate court cannot exercise any jurisdiction over any fund until the bond is filed required in the particular case, which gives the parties interested power to enforce by suit on the bond the decrees and orders of the court affecting their rights in the fund. Whether, however, the first step in the jurisdiction of the probate court over a fund is always to require the bond which secures the safety of the fund, and furnishes the means of enforcing the legal administration and application of it, the view which we have taken of this case does not require us to determine. These remarks may serve as a caveat against the inference that the case of trusts created by will are an exception to the general rule that, before a fund comes to the control of the probate court, security must be given to account for it, and administer and dispose of it according to law and the decrees and orders of the court.

As we are of opinion that the jurisdiction over trusts claimed in this case for the courts of probate is not conferred by the general grant of probate jurisdiction in the statute, and cannot be derived from the practice of the ecclesiastical courts in England, we must look for it, if it exists, in some of the provisions of the statutes which relate to this subject of trusts.

I do not find that the courts of probate had by statute any jurisdiction over trusts for any purpose till the statute of June 21, 1820, entitled, "An act granting additional powers to the courts of probate, and for the regulation of trustees and guardians," which required that, where a trust was created by will, a bond should be given, provided for the removal and appointment of trustees, for an inventory and the settlement of an account substantially as the statutes do now ; but gave the judge no power to interfere with the management of the trust estate, except by calling the trustee to account under his bond. The statute of July 2, 1838, entitled, "An act relating to trust property," empowered the judge of probate, in cases of property held in trust under a will, "to authorize and require the trustee to sell any property so holden in trust, and to invest the proceeds of such sale in such manner as will be most for the interest of all persons concerned ; and the said judges respectively, may, from time to time, make such orders and decrees as they may think just and reasonable in relation to the sale, management, and disposition of said trust." These provisions of this act were retained in the Revised Statutes, adding, "and to the settlement of the account of such trustee ;" and no further change has been made in this law. Rev. Stats., ch. 168, sec. 9 ; Gen. Stats., ch. 186, sec. 9.

The bond required to be given by the trustee is with condition that he

shall faithfully execute the trust "according to the intent of the devisor." The question here is as to the execution of the trust; and it might be argued from the terms used in the bond required to be filed in the court of probate, that, when any question arose as to the rights of the *cestuis que trust*, that court should have jurisdiction to entertain and determine it. But that argument would overlook the object for which bonds in the probate court are required to be given, which is to secure the rights of parties as they shall be established in that or other courts. In the case of an administrator's bond, the condition is that he shall administer the estate according to law, which of course binds him to pay all debts of the estate if he have assets. The judge of probate cannot determine whether a debt is due to or from the estate; but when a debt is recovered against the estate in a court which has jurisdiction of the question, if the administrator, having assets, neglects to pay, it is a breach of his bond. So, if a court of competent jurisdiction should determine that the interest of this trust fund should be appropriated in any particular way, and the trustees neglected to obey the decree, it would be a breach of the bond which trustees are required to give.

The general object of bonds required to be given in the courts of probate is to secure the rights of all parties interested, where their rights are determined in the proper jurisdiction; and, until they are so determined, claims on the estate cannot, as a general rule, be enforced by suit on such bonds. The suit is in the ordinary courts of law, and the remedy is not by any proceeding in the court of probate. The same reason and rule apply in the case of a trustee as of an administrator. The bond in both cases is a general security that the fund shall be forthcoming to answer all legal claims on it; but those claims may be of a nature which requires them to be considered and determined in another jurisdiction. No bond has been given in this case; but if there had been, we think there is nothing in the condition of the bond from which we can infer a grant of general equity jurisdiction over trust funds created by will.

It is maintained that, under the grant, in the act of 1838 and the Revised Statutes, of power to make such orders and decrees as he may think just and reasonable in relation to the sale, management, investment and *disposition* of the trust property, the judge of probate has jurisdiction to settle the construction of the will, determine who are entitled to the income of the fund, enforce the application of the fund, and, in general, exercise full jurisdiction over the trust; that the term "*disposition*" used in the statute, implies this grant of general jurisdiction over such trusts.

In the first place, the word *disposition* standing alone is at least equivocal, and may as well, or better, relate to the leasing, and the sale and reinvestment of the property in the hands of the trustees with a view to the safety and profit of the fund, as to the distribution of the fund among the *cestuis que trust*. But the thing that is to be *disposed* of under the order of the court, is the same that is to be so managed, sold and invested and disposed of; that is to say, the fund itself, and not the income and use, which belong to the *cestuis que trust*. Then,

again, the general object of the act was to give the judge authority to interfere directly with the management of the fund, to ensure the safe and profitable investment of it; and it is evident that the decrees and orders which he was empowered to make had reference to this general object.    The orders relate to the sale, management, investment and disposition of the property.    The word *disposition* is used in connection with other terms on the same subject; is classed with those terms; and by a familiar rule of interpretation must be understood to have a similar sense and meaning: and the other terms relate to the management of the fund in the hands of the trustees, and not to the application of the fund to the use of the *cestuis que trust*.    But there is another view of this question, which would seem to be entirely decisive.    The judge is empowered to make "such orders and decrees as *he may think just and reasonable* in relation to the sale, management, investment and disposition of such trust property."    If this relates to the management and disposition of the property in the hands of the trustees with the object of making the fund safe and profitable, the proper and safe guide of the judge would be his own opinion as to what was just and reasonable. But the judge, in determining the conflicting rights of claimants under the will, must follow the intent of the will, and could not substitute his own ideas of what might be just and reasonable.    There is no guide or limitation of the authority which the judge has in making his orders for the management and disposition of the property except his opinion of what is just and reasonable.    The authority, therefore, cannot extend to the determination of disputed rights under the will, because they must be determined by the provisions of the will and not by the opinion of any tribunal as to what would be just and reasonable.

It is to be observed that this term *disposition* is used in reference to the management of property in the hands of guardians, where I suppose it would hardly be contended that it meant more than the management and disposition of the property in the hands of the guardian.    Revised Statutes, ch. 152, sec. 4.

The question here was upon the construction of the will which created the trust, and as to the conflicting claims of different parties to the beneficial interest in the fund.    The probate court was called on to settle the construction of the will, determine the rights of the parties, and enforce the execution of the trust.    These questions properly belong to the general jurisdiction in equity.    *Brock* v. *Sawyer*, 39 N. H. 547; *Portsmouth* v. *Shackford*, 46 N. H. 426.    The general jurisdiction in equity is conferred by statute on the supreme judicial court, and especially in case of trusts.    There is no ground to suppose the legislature intended to give equitable jurisdiction to any other court; Gen. Stats. ch. 190, sec. 1; and this subject of trusts is particularly mentioned as belonging to the jurisdiction in equity conferred on the supreme court.

The general policy of the law in this State has been to confine the contentious jurisdiction of the probate courts within narrow limits, leaving the practice there to be simple and generally free from such difficulty as would require the attendance of counsel and the expense of protracted trials.    Questions relating to the interpretation of wills creating

trusts frequently involve difficult points of law, and complicated matters of fact, such as are not usually investigated in the courts of probate, and such as cannot be well examined by the methods and machinery of those courts. *Wood* v. *Stone*, 39 N. H. 572, 574 and 575. No case has been cited by the learned counsel for the appellees, and none has occurred to us, in which such questions have been entertained in the probate courts of this State, or of other States where the courts of probate have similar jurisdiction. The position here taken by the appellees involves the claim of general jurisdiction over trust funds created by will. Jurisdiction over such trusts is conferred by the statute in express terms on the supreme judicial court. If, in this case, the probate court has power to enforce the trust according to the intent of the donor, it must have it in every other trust created by will. If the legislature intended to grant the probate court concurrent jurisdiction over these trusts with the supreme court, they would not, we think, have left their intention to be inferred from a single doubtful expression in a statute whose general object was entirely different; but would have conferred the authority in plain and explicit terms.

We think the language used in the statute, taking it all together, and looking to the general object and scope of the act, can mean no more than that, in order to preserve the trust property from loss, and put it in a condition to be profitable to the *cestuis que trust*, the judge may order it to be managed and disposed of in the hands of the trustees as he may think just and reasonable; and that the statute was not intended to give the court of probate general equity jurisdiction to determine the construction of the will, decide who were entitled to the benefits of the fund, and in what proportions, and enforce the execution of the trust according to the intent of the devisor.

The conclusion is, that the judge of probate had no jurisdiction of the petition, and that his decree must be vacated.