NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2018-0136

SAMUEL ROGERS

v.

JOSEPH ROGERS

Argued: November 28, 2018
Opinion Issued: February 1, 2019

Greenblott & O'Rourke, PLLC, of Contoocook (Seth W. Greenblott on the brief and orally), for the plaintiff.

Bielagus Law Offices PLLC, of Milford (Jason A. Bielagus on the brief and orally), for the defendant.

DONOVAN, J. The plaintiff, Samuel Rogers, appeals an order of the Superior Court (Nadeau, C.J.) dismissing his complaint against his son, Joseph Rogers, upon finding that the circuit court, probate division (probate court),[1] and not the superior court, maintains exclusive subject matter jurisdiction over his cause of action. We reverse and remand.

---

[1] Although the legislature established the circuit court in 2011 by merging the former probate and district courts with the former judicial branch family division, this opinion will refer to the circuit court, probate division as the "probate court" to avoid any confusion with our prior decisions concerning probate jurisdiction.

I. Factual History

The trial court found or the record otherwise supports the following facts. The plaintiff's wife died in March 2012 and the parties' dispute arose after the disposition of her estate. The decedent's will named the defendant as the executor of the estate, which was comprised, in pertinent part, of two properties in Hollis — the plaintiff's marital home and the decedent's 50% ownership interest in 94.3 acres of undeveloped land on Rocky Point Road (Rocky Point).[2] In her will, the decedent devised one-third of the estate to the plaintiff and devised the remaining two-thirds of the estate to the defendant.

The probate court appointed the defendant as the executor of the estate in May 2012 and, pursuant to his duties as the executor, he contracted for appraisals of both properties. The defendant's appraiser valued the decedent's 50% interest in Rocky Point at $550,000 and the marital home at $273,000. Based upon these valuations, the defendant suggested to the plaintiff that they settle the estate by the plaintiff taking title to the marital home, in his name alone, in exchange for the defendant assuming the estate's entire interest in Rocky Point. The plaintiff accepted this offer in light of his apparent impression that his one-third interest in the estate's ownership of Rocky Point closely approximated the defendant's two-thirds interest in the marital home.[3] This exchange of property interests was accomplished by way of an exchange of fiduciary deeds in September 2012.

At some point in 2015, the plaintiff learned that the Town of Hollis had either offered to purchase or agreed to purchase Rocky Point for $2,500,000, but, for reasons not established by the record, the sale was never consummated. Thereafter, the plaintiff discovered that his son had commissioned an appraisal of Rocky Point in 2005 which estimated that the value of the property, at that time, was $1,950,000. These valuations suggested that following the parties' exchange of property interests, the defendant's interest in Rocky Point would have been worth approximately $975,000.

II. Procedural History

Armed with these discoveries, the plaintiff sued the defendant in the superior court in September 2016 alleging claims of breach of fiduciary duty, fraud, negligence, and unjust enrichment. The defendant moved to dismiss the suit in October 2016 arguing, inter alia, that the plaintiff's claims were barred

---

[2] The remaining ownership interests in Rocky Point are believed to be held by another trust created by another relative of the decedent.

[3] The defendant's 2012 appraisals suggested that the plaintiff's one-third executory devise to Rocky Point would have been valued at approximately $183,000 and the defendant's two-third executory devise to the marital home would have been valued at approximately $182,000.

2

by the time limitations set forth in RSA 556:3 (2007), because all claims against the estate needed to be filed within six months of the probate court's issuance of the certificate of appointment in May 2012, and barred by the doctrines of res judicata and collateral estoppel, because he could have, but did not, raise these claims in the original probate matter. The Trial Court (Ignatius, J.) denied the motion upon finding that: (1) the defendant mischaracterized the nature of the plaintiff's claims as against the estate rather than the defendant, personally; and (2) the res judicata doctrine did not apply because the plaintiff could not have previously litigated his claims in the initial probate matter since he did not become aware of the defendant's actionable conduct until 2015, three years after the probating of the estate.

In January 2017, the defendant filed another motion seeking to dismiss the plaintiff's complaint, or in the alternative, to transfer the matter to the probate court. In his pleading, the defendant argued that "[a]ll of [the] [p]laintiff's claims are related to the [e]state, and the administration of the [e]state, and the values of estate assets, and the disbursement of the estate assets" and, therefore, the probate court has exclusive jurisdiction over the parties' dispute pursuant to RSA 547:3 (Supp. 2018). In March 2017, the trial court denied the defendant's motion, citing its previous ruling that the defendant had mischaracterized the nature of the plaintiff's claims.

Undeterred, the defendant moved to consolidate the plaintiff's action with a petition he filed in the probate court against the plaintiff seeking to enforce his mother's will. In his motion, he again argued that the probate court maintained jurisdiction over the parties' disputes.[4] The plaintiff objected, arguing that: (1) the court had already determined this issue; and (2) the superior court was the proper forum to determine the plaintiff's tort claims and the probate court was the proper forum to decide the defendant's enforcement action. In December 2017, the trial court denied that motion.

The defendant moved to reconsider, arguing that the court had not yet decided the issue of jurisdiction under RSA 547:3. On this occasion, the Trial Court (Nadeau, C.J.) granted the motion and dismissed the plaintiff's superior court claims. The trial court found that the plaintiff's action "clearly relates to an estate and will" because he alleges that the defendant purposely misrepresented the value of Rocky Point "during the administration of [the decedent's] estate." (Emphasis in original.) The trial court further found that the probate court has exclusive jurisdiction over the dispute because the parties reached their agreement during the administration of the estate and the

---

[4] The record suggests that, in response to the plaintiff's superior court complaint, the defendant filed a motion in the probate court seeking to reopen the original estate and to enforce a no-contest clause set forth in his mother's will. The defendant withdrew his probate action once the superior court dismissed the plaintiff's claims in the matter now before us. The probate court then closed the case.

plaintiff is suing the defendant in his capacity as the administrator of the estate.  The plaintiff moved to reconsider, but the trial court denied that motion without comment.  This appeal followed.

III. Appellate Arguments

On appeal, the plaintiff maintains that the superior court erred, as a matter of law, in finding that the probate court has exclusive jurisdiction over his claims, because he is not seeking a re-administration of the estate or challenging the allocation of the property distribution.  Instead, he argues that his complaint asserts tort claims for which he seeks damages based upon his son's violations of his common law obligations.  The plaintiff further argues that, given the absence of a change in circumstances and the substantial litigation that has occurred in this case, the superior court erred in reversing its own ruling.

The defendant counters that his father cannot meet his burden of demonstrating reversible error by the superior court because: (1) RSA 547:3 confers exclusive jurisdiction to the probate court over the plaintiff's action given that all of the plaintiff's claims concern the administration, settlement and distribution of estate assets; (2) whatever rights the plaintiff has to the estate's Rocky Point interests arise from his capacity as a beneficiary of the decedent's will; and (3) granting the plaintiff's requested relief would lead to absurd results by which any beneficiary could challenge the administration of an estate years after the final settlement, contrary to New Hampshire law.

IV. Analysis

A. Subject Matter Jurisdiction of the Probate Court and Superior Court

The parties' competing jurisdictional claims require that we analyze the subject matter jurisdiction of both the superior and probate courts to determine whether the dispute before us falls exclusively within the probate court's jurisdiction.  A court lacks the authority to hear or determine a case concerning subject matters over which it has no jurisdiction.  Daine v. Daine, 157 N.H. 426, 428 (2008).  The probate court is not a court of general jurisdiction; rather, "[i]ts powers are limited to those conferred upon it by statute."  Petition of Cigna Healthcare, 146 N.H. 683, 688 (2001) (quotations omitted).  By contrast, the superior court is a court of general jurisdiction and has authority to entertain actions in equity, when there is no adequate remedy at law, State v. Simone, 151 N.H. 328, 331 (2004), as well as "civil actions and pleas, real, personal, and mixed, according to the course of the common law."  RSA 491:7 (Supp. 2018).

4

Determining the jurisdiction of the probate court is a matter of statutory interpretation which presents a question of law subject to our de novo review. In re Athena D., 162 N.H. 232, 234-35 (2011). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed by the words of the statute considered as a whole. Cigna, 146 N.H. at 688. We first look to the statutory language, and whenever possible construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. In the Matter of McAndrews & Woodson, 171 N.H. ___, ___ (decided August 10, 2018) (slip op. at 5). When the language of a statute is unambiguous, we do not look beyond it for further indications of legislative intent. Id.

Pursuant to RSA 547:3, I, the probate court has exclusive jurisdiction, in relevant part, over:

> (b) The granting of administration and all matters and things of probate jurisdiction relating to the composition, administration, sale, settlement, and final distribution of estates of deceased persons, including . . . claims against the executor or administrator for those services related to the prior care and maintenance of the decedent . . . [as well as]

> (c) The interpretation and construction of wills . . . .

RSA 547:3, I(b)-(c). We have consistently construed this language as plainly and unambiguously limiting the exclusive jurisdiction of the probate court. See, e.g., In re Estate of O'Dwyer, 135 N.H. 323, 324 (1992) (superseded by statute as stated in In re Muller, 164 N.H. 512, 519 (2013)); Hayes v. Hayes, 48 N.H. 219, 229 (1868); see also Cigna, 146 N.H. at 689-90. On appeal, the defendant does not address our previous decisions defining the limited jurisdiction of the probate court. Instead, he argues that the probate court has exclusive jurisdiction over the plaintiff's action because all of the plaintiff's claims "concern the administration, settlement, and distribution of estate assets." Essentially, he maintains that because each of the plaintiff's causes of action "relate" to the defendant's administration of his mother's estate, as contemplated by the language in RSA 547:3, the probate court alone has subject matter jurisdiction over the present cause of action. We disagree.

"'The general policy of the law in this State has been to confine the contentious jurisdiction of the probate courts within narrow limits.'" Cigna, 146 N.H. at 689 (quoting Hayes, 48 N.H. at 229). In Hayes, we interpreted a variation of the phraseology "all matters and things of probate jurisdiction relating to . . . the estate of deceased persons." See Hayes, 48 N.H. at 223. At that time, we did not construe this same language as granting general

5

jurisdiction to the probate court to determine, for example, conflicting claims to an interest accrued under a trust created by will, because "[i]f the [probate] court can do . . . this, it is quite clear that it must be in the exercise of a general equity jurisdiction over all trusts created by will." Id. at 225.

When the legislature has intended to expand the scope of the probate court's jurisdiction, it has done so in explicit terms. For example, in the absence of an explicit legislative grant of probate court jurisdiction to determine title to real estate, we held that the superior court was the proper forum for such a dispute, and the probate court lacked such jurisdiction. See O'Dwyer, 135 N.H. at 324 (holding that former version of RSA 547:3 (Supp. 1991) (amended 1992, 1993, 1997, 2005, 2006, 2007, 2008, 2010), conferred upon the probate court jurisdiction over all matters and things of probate jurisdiction relating to the sale, settlement, and final distribution of estates of deceased persons but did not grant jurisdiction to determine title to real estate to establish whether it was an asset of the estate). After the O'Dwyer decision, "the legislature effectively expanded the probate court's jurisdiction to encompass disputes concerning the real estate of a decedent through the Omnibus Justice Act of 1993," which expressly granted the probate court "jurisdiction to resolve issues involving real estate of the decedent if the property is in the estate of the decedent." In re Estate of Porter, 159 N.H. 212, 214 (2009) (quotations omitted); see Laws 1992, 284:49; see also RSA 547:3-b (Supp. 2018) (granting probate court equity jurisdiction); RSA 547:11-b (2007) (granting probate court jurisdiction over declaratory judgment actions regarding title to real or personal property in decedent's estate); RSA 547:11-c (2007) (granting probate court jurisdiction over quiet title actions regarding real or personal property in decedent's estate).

The legislature is presumed to know the narrow construction that we have previously applied to statutes conferring jurisdiction on the probate court. Cigna, 146 N.H. at 690. If legislators intended to grant to the probate court exclusive jurisdiction over all common law tort claims that "relate," in any sense, to an estate, "'they would not, we think, have left their intention to be inferred from a single doubtful expression . . . but would have conferred the authority in plain and explicit terms.'" Id. (quoting Hayes, 48 N.H. at 230). Despite the previously referenced amendments to RSA 547:3 and the acknowledged expansion of probate court jurisdiction, the legislature has not explicitly clarified the "doubtful expression" that remains within the statute or otherwise expanded the probate court's exclusive jurisdiction to include common law claims which are, in some manner, related to an estate. Id.

Our reading of the powers granted to the probate courts under the current statutory scheme is supported by our canons of statutory interpretation. Nothing within RSA 547:3 or RSA 547:3-b (Supp. 2018), by which the legislature granted equity jurisdiction to the probate court, reflects a legislative intent to grant to the probate court exclusive jurisdiction over tort

6

claims simply because the claims are related to or occurred during the administration of an estate. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include." In re Muller, 164 N.H. at 519 (quotation omitted). We do not read the current version of RSA 547:3 to exclusively place jurisdiction in the probate court to determine common law torts based solely upon the fact that some of the alleged conduct occurred during or as a part of the administration of an estate. Instead, determining the proper forum for the plaintiff's claims here requires an assessment of the nature of his claims. See DiGaetano v. DiGaetano, 163 N.H. 588, 591 (2012).

Accordingly, we now consider the nature of the plaintiff's claims to determine whether they fall within the narrow limits of the probate court's exclusive jurisdiction. In DiGaetano, we examined the scope of the probate court's jurisdiction with respect to a dispute over a family trust by assessing the nature of the dispute or claims to determine whether they fell within the probate court's jurisdiction. Id. In that case, we applied a two-part test that examines: (1) whether the action relates to an estate, will, or trust; and (2) whether the relief sought is equitable or legal. Id. The defendant suggests that the DiGaetano analysis is useful here as well. We agree. He argues, however, that the probate court has exclusive jurisdiction over the plaintiff's claims because they all relate to the estate, given that they "arose during the probate of the [e]state . . . from actions [the defendant] took as [e]xecutor in administering the [e]state and distributing [e]state assets." On this point, we disagree.

While the DiGaetano test and the language of RSA 547:3, I(b) both focus on a matter's relationship to a court's jurisdiction, neither the test nor the statute should be construed as broadly as the defendant suggests. As we noted earlier, RSA 547:3 must be interpreted narrowly. Thus, the term "relating to" in the statute requires a direct connection to the elements of probate court jurisdiction, which, as defined by the statute and at issue here, concern the "composition, administration, sale, settlement, and final distribution" of an estate. RSA 547:3, I(b).

In DiGaetano, we examined a separate statute, RSA 547:3, I(c) (Supp. 2011), and determined that the nature of the plaintiffs' claim in that case required the interpretation of the meaning and validity of a trust, a "task squarely within the exclusive jurisdiction of the probate court under [the statute]." DiGaetano, 163 N.H. at 591. Thus, for the purposes of determining the nature of a party's claim in the context of DiGaetano's jurisdictional analysis, it is the manner by which an action relates to an estate that is the critical inquiry, not whether a relationship simply exists. Therefore, the determination of subject matter jurisdiction in this case depends upon whether a direct connection exists between the plaintiff's claims and the composition, administration, sale, settlement, and final distribution of the estate, and

7

whether the connection relates to the estate or will in a manner that mandates the probate court's exclusive jurisdiction.

Here, the plaintiff's claims do not require the interpretation of a will or trust, nor do they require an assessment of the estate's administration or seek a re-distribution of the estate's assets. Although the plaintiff's action may pertain, in some measure, to the parties' settlement of their interests in the estate, the dispute does not relate to the manner by which the estate was settled. Rather, the estate has been settled and the assets have been disbursed with the defendant receiving title to the estate's entire interest in Rocky Point and the plaintiff receiving the entire interest in the marital home. The plaintiff seeks monetary damages, not a re-opening of the estate's administration or a redistribution of estate property. Resolution of the parties' dispute does not depend upon an analysis of "the composition, administration, sale, . . . and final distribution of [the decedent's] estate[]" or "the interpretation and construction of wills." RSA 547:3, I(b)-(c). The plaintiff's claims challenge the defendant's conduct and representations made during the negotiation of the settlement. Thus, the litigation of this dispute requires fact-finding regarding the parties' intent, their representations to one another, and their knowledge of the value of Rocky Point garnered before, during, and after the probate of the estate.

The plaintiff's claims are common law tort and equitable claims against the defendant in his personal capacity based upon the defendant's allegedly fraudulent conduct. While the plaintiff may have been a beneficiary of the will, his claims are personal in nature and arise from alleged conduct that is incompatible with a proper administration or settlement of an estate. See Frost v. Frost, 100 N.H. 326, 327, 329 (1956) (plaintiff's claim for services rendered to decedent which were refused by the executor during estate administration constituted a claim against the executor personally and not the estate). The facts and circumstances surrounding the plaintiff's claims may have a relationship to the estate, but the plaintiff is suing his son and not the estate. More specifically, the plaintiff is challenging the defendant's conduct in a manner that does not require the probate court's expertise or its jurisdiction because he is challenging the defendant's representations concerning the value of an estate asset and not the manner by which he administered, sold, settled or distributed estate assets. Consequently, the manner by which these claims relate to the decedent's estate and will is tangential, not direct, and thus, the plaintiff's claims do not fall within the probate court's exclusive jurisdiction.

### B. Defendant's Claim of "Absurd Results"

The defendant nonetheless argues that an interpretation of the statute in the manner indicated above will lead to absurd results which enable "a beneficiary to sue an executor in Superior Court several years after probate is closed . . . [,] contrary to New Hampshire law." Similarly, the defendant

8

maintains that granting the plaintiff relief here would convert the superior court to an appellate court with jurisdiction over probate matters, because a party dissatisfied with the findings of a probate court could "bring an action against the executor or administrator in Superior Court, at any time." We find the logic behind the defendant's claimed absurdities to be flawed.

First, the superior court here will have no occasion to review or assess the probate court's prior rulings and findings. Rather, upon remand, the trial court will be required to assess the conduct of the executor and determine the parties' knowledge and intent before, during, and after the probate court proceedings. Second, our interpretation of RSA 547:3, I(b) and our ruling on the nature of the plaintiff's claims will not permit the re-opening of stale probate claims years after the administration of an estate. Instead, our decision identifies the proper forum in which an aggrieved beneficiary may pursue his claims after discovering allegedly unlawful conduct by an executor. We conclude that depriving an aggrieved beneficiary of a forum in which to pursue claims which accrued outside the strict time limits applicable to probate actions and to seek damages when an executor has wrongfully liquidated, sold, or misappropriated estate assets would itself be an absurdity that the law cannot condone.

Applying the defendant's expansive interpretation of the term "relates" in RSA 547:3, I(b) would require a beneficiary of a will who has incurred losses as a result of the negligence of the attorney who drafted the instrument to pursue his or her claims in probate court simply because the claim "relates" to a will. The same rationale would similarly require that an executor who engages in fraudulent conduct by improperly distributing estate property to a non-beneficiary, or another third party for the executor's benefit, be sued in probate court. Our canons of statutory construction do not permit or countenance an interpretation of a statute that would lead to these absurd results. See State v. Brawley, 171 N.H. ___, ___ (decided September 18, 2018) (slip op. at 3) ("We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."). Accordingly, the superior court, as a court of general jurisdiction, is a proper forum in which the parties' dispute may be heard and determined. In light of this ruling, we need not reach the plaintiff's remaining appellate arguments.

Reversed and remanded.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

9