# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0506, <u>Gaetane Benner v. Claudette Grenier</u>, the court on December 1, 2022, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff appeals an order of the Superior Court (<u>Nicolosi</u>, J.) dismissing her complaint against the defendant, who is her sister, for lack of subject matter jurisdiction. We affirm in part, reverse in part, vacate in part, and remand.

In June 2021, the plaintiff filed a complaint in superior court requesting a jury trial and alleging the following. For the purposes of this appeal, we accept the plaintiff's allegations as true. We also rely upon documents the plaintiff provided to the trial court to set forth the following facts.

The parties' mother, Jeannette Jacques (Mother), died in July 2020. In 1982, Mother executed a will, which bequeathed "all of [her] property, whether real, personal or mixed, to which [she] may be entitled or over which [she] may have any power of disposition or appointment at the time of [her] death to [her] children," the parties. The will also nominated the parties as her co-executrices.

In January 2019, Mother executed a notarized document setting forth her "final instructions" as to the distribution of certain items of personal property upon her death. The document identified the plaintiff as the recipient of Mother's "Wedding Ring/Band," among other items, and instructed that, if the plaintiff did not want Mother's clothes dryer, the defendant was "to buy [it] & pay [the plaintiff] $150 for it."

Mother and the plaintiff had at least one joint account at Members First Credit Union. In January 2019, Mother signed a document to remove the plaintiff as an owner of one of the joint accounts. According to the plaintiff, the defendant "appeared to have used [her power of attorney to act for Mother] to . . . remove[] [the plaintiff] as the sole beneficiary" of one of Mother's Members First Credit Union accounts. In addition, the defendant appeared to have used the power of attorney "to make unauthorized transactions." Specifically, at some point, $7,831 was withdrawn from the plaintiff's and Mother's joint Citizens Bank account and was deposited into a joint savings account the

defendant had at St. Mary's Bank.[1]  Also, $14,142 was withdrawn from the plaintiff's and Mother's joint certificate of deposit and deposited into the defendant's joint savings account.

After Mother died in July 2020, and contrary to the document detailing her final instructions, the defendant "prohibited [the plaintiff] from entering [Mother's] apartment and proceeded to distribute [Mother's] assets herself even though [the plaintiff] was also named as a co-executrix."  The defendant "gave away [Mother's] wedding ring/band to [the defendant's] daughter . . . instead of [the plaintiff]" even though Mother had bequeathed the ring to the plaintiff in the January 2019 document, which the plaintiff terms a "Codicil."  The defendant also "refused to give [the plaintiff] the $150 for mom's clothes dryer as listed in [her] 1/3/19 Codicil."  Since Mother's death, the defendant "has kept the $447 that was withdrawn in January 2019 . . . from a joint account [the plaintiff] had with [Mother]," instead of spending the money on an after-funeral luncheon as Mother had "request[ed] in many of her notes."  The defendant has also refused to give the plaintiff $965 "from the Member's 1st account," although the plaintiff "was listed as the sole beneficiary to this account."

The plaintiff requested that the court order the defendant to give her Mother's "wedding ring and band that had been bequeath[ed] to [her] via the Codicil dated 1/3/19."  She also sought "restitution" in the amount of $52,935.36.  According to a demand letter from the plaintiff's attorney, which the plaintiff included in the appellate record, $52,935.36 includes the following:

- The $10,000.00 difference between the "real value" of Mother's life estate in certain property and the value the defendant "recorded" in 1997, plus $4,683.00 in interest;
- $4,713.12 "in unaccounted for monies that was withdrawn from [Mother's] Member's First Credit Union checking account, . . . which named [the plaintiff] as the sole beneficiary";
- $965.00 in cash from "the Member's First Credit Union Account, . . . in which [the plaintiff] was also listed as the sole beneficiary";
- $6,025.45, "which was the balance in [Mother's] Member's First Credit Union checking and shares account as of 8/3/2020," for which the plaintiff was also the sole beneficiary;
- $150.00 for Mother's dryer;
- $14,142.00, "withdrawn from [Mother's] and [the plaintiff's] St. Mary's Bank CD . . . back in August 2016 and deposited into [the defendant's] Joint Savings Account at St. Mary's Bank";

---

[1] The plaintiff's complaint does not identify the other joint owner(s) of this account.

- $7,831.24 "that was in a Citizens Bank Checking Account" the plaintiff held with her daughter and with Mother, which was withdrawn in January 2019 and deposited into the defendant's St. Mary's Bank joint savings account;
- $447.00 withdrawn in January 2019 from the plaintiff's joint savings account with Mother;
- $1,089.55, "which represents half of [Mother's] unused Tax Exemption";
- $2,500.00 in cash that Mother had left in her home; and
- $220.00 "of damages owed to Manchester Memorial for the writing placed on [Mother's] monument."

The trial court subsequently determined that it lacked subject matter jurisdiction "to adjudicate the matters presented in the [plaintiff's] complaint." The court explained that the complaint's allegations fell within the exclusive jurisdiction of the probate division of the circuit court pursuant to RSA 547:3, I, and, on that basis, dismissed the complaint.

The plaintiff filed a motion to reconsider asking the court to reinstate the case because she had requested a jury trial and "Superior Court is the only Court where trial by jury exists." The plaintiff asserted that the superior court had ancillary jurisdiction over the matter pursuant to RSA 547:3-l. In her motion, the plaintiff acknowledged that her mother's estate "should have originally gone to Probate Court," but averred that the defendant "refused to enter the Will or Estate in Probate Court" and had already liquidated "all of [her mother's] estate." The plaintiff asserted that, because the defendant had already liquidated her mother's assets, there was "now no Estate to Probate." The trial court denied the plaintiff's motion to reconsider, and this appeal followed.

Resolving the issues in this appeal requires that we analyze the subject matter jurisdiction of the superior court and the probate division of the circuit court to determine whether the plaintiff's claims fall exclusively within the probate division's jurisdiction. See Rogers v. Rogers, 171 N.H. 738, 742 (2019). A court lacks the authority to hear or determine a case over which it lacks jurisdiction. Id. The ultimate determination as to whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. In the Matter of O'Neil & O'Neil, 159 N.H. 615, 622 (2010).

The superior court is a court of general jurisdiction. Id. at 743; see RSA 491:7 (Supp. 2021). By contrast, the powers of the circuit court probate division are limited to those conferred by statute. Rogers, 171 N.H. at 743. As relevant to this case, the probate division has exclusive jurisdiction over:

> (b) The granting of administration and all matters and things of probate jurisdiction relating to the composition, administration,

sale, settlement, and final distribution of estates of deceased persons, including the establishment of death of a person presumed dead and assignment of homestead and claims against the executor or administrator for those services related to the prior care and maintenance of the decedent and the administration of insolvent estates and appeals therefrom.

(c) The interpretation and construction of wills and the creation by judgment or decree, interpretation, construction, modification, and termination of those trusts described in RSA 564-A:1, I.

. . . .

(m) Declaratory judgment actions pursuant to RSA 547:11-b.

RSA 547:3, I (b)-(c), (m) (2019).  RSA 547:11-b provides:

Any person claiming a present legal or equitable right or title to real or personal property in the estate of deceased persons or to guardianship, conservatorship, or trust assets may maintain a petition against the estate, guardian, conservator, or trustee to determine the question as between the parties, and the probate court's judgment or decree thereon shall be conclusive.  The existence of an adequate remedy at law or in equity shall not preclude any person from obtaining such declaratory relief.

RSA 547:11-b (2019).

The trial court found that all of the plaintiff's allegations in her complaint "fall within the purview of RSA 547:3, I(b) or (m)."  We agree with the trial court regarding some allegations, disagree with the trial court regarding others, and for some of the allegations, we lack sufficient information upon which to decide whether jurisdiction is in the superior court or the probate division of the circuit court.

Determining the proper forum for the plaintiff's claims requires assessing the nature of those claims.  See Rogers, 171 N.H. at 745.  Here, we conclude that the plaintiff's claims for return of Mother's wedding rings and any other personal property allegedly bequeathed to her in Mother's purported will or codicil fall squarely within the exclusive jurisdiction of the probate division under RSA 547:3, I(b) and I(c).  The plaintiff's claims for return of Mother's wedding rings and other personal property allegedly bequeathed to her in the purported will or codicil specifically challenge the defendant's "final distribution of [Mother's] estate[]," RSA 547:3, I(b), and resolving them depends upon "the interpretation and construction of" Mother's will, RSA 547:3, I(c).  To the extent

4

that the plaintiff seeks a declaratory judgment with regard to her right to recover any property allegedly bequeathed to her in the purported will or codicil, the probate division is the exclusive forum from which to obtain that declaration. See RSA 547:3, I(m); RSA 547:11-b.

By contrast, the plaintiff's claims regarding the joint accounts she held with Mother do not fall within the exclusive jurisdiction of the probate division. Resolving them does not require interpreting the alleged will or its codicil. The joint accounts would not have been part of Mother's estate to be probated (had the will been filed with the court). The plaintiff's claims related to the joint accounts she held with Mother are claims against the defendant in her personal capacity, not in her representative capacity as co-executrix of Mother's estate. In these claims, the plaintiff does not challenge the defendant's "final distribution of [Mother's] estate[]." RSA 547:3, I(b). In these claims, "[t]he plaintiff seeks monetary damages," rather than "a redistribution of estate property." Rogers, 171 N.H. at 746. Thus, the superior court has jurisdiction over the plaintiff's claims that: (1) the defendant improperly used her power of attorney to remove the plaintiff as "the sole beneficiary" of one of Mother's Members First Credit Union accounts; and (2) the defendant improperly used the power of attorney to make "unauthorized transactions," including the defendant's alleged withdrawals from the plaintiff's joint savings account with Mother, joint Citizens Bank Account with Mother, and joint certificate of deposit with Mother.

With respect to the plaintiff's other allegations, such as her allegations related to Mother's unused tax exemption and the alleged $10,000 difference between the "real value" of Mother's life estate in certain property and the value the defendant "recorded" in 1997, plus $4,683.00 in interest, we vacate the trial court's order and remand for the trial court to reconsider, in light of this order, whether these allegations state any claims upon which relief can be granted over which the superior court has subject matter jurisdiction.

Although the plaintiff argues that all of her claims constitute ancillary matters over which the superior court has exclusive jurisdiction, she is mistaken. RSA 547:3-l defines the ancillary matters over which the superior court has exclusive jurisdiction as "claims for . . . damages or for the recovery of money or property brought on behalf of an estate . . . against a third party or brought by a third party against an estate . . . in which the right to trial by jury exists and is demanded." RSA 547:3-l (2019). While the plaintiff has demanded a jury trial, her claims are not against the estate, but are against the defendant.

Accordingly, we affirm the trial court's dismissal of the plaintiff's claims for return of Mother's wedding rings and any other personal property Mother allegedly bequeathed to her in the purported will or codicil, reverse the court's

5

dismissal of the plaintiff's claims related to the joint accounts she held with Mother, and vacate the court's order as it relates to the plaintiff's remaining alleged claims. We remand for further proceedings consistent with this opinion.

<u>Affirmed in part; reversed in part; vacated in part; and remanded</u>.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6